BERNSTEIN v. N. V. NEDERLANDSCHE–
AMERIKAANSCHE STOOMVAART –
MAATSCHAPPIJ (CHEMICAL BANK
& TRUST CO., Third-Party Defendant).
No. 141, Docket 21193.

United States Court of Appeals
Second Circuit.

Feb. 21, 1949.

Supplemental Opinion March 25, 1949.

Bennet, House & Couts, of New York City (Victor House, William S. Bennet, Bernard A. Finkel, and Seymour D. Altmark, all of New York City, of counsel), for plaintiff-appellant.

Burlingham, Veeder, Clark & Hupper, of New York City (John L. Galey, Norman M. Barron, and Hervey C. Allen, Jr., all of New York City, of counsel), for Holland-America Line.

Shearman & Sterling & Wright, of New York City (John A. Wilson and M. Van Voorhies, both of New York City, of counsel), for Chemical Bank & Trust Co.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff Bernstein who owned all the stock of the Red Star Line, a German limited liability company, brought suit on June 1, 1945, against the Holland-America Line, a Dutch corporation, which owned the S. S. Pennland and the S. S. Westernland and

other assets, setting forth that in January, 1937, he was taken forcibly into custody by Nazi officials and imprisoned in jail in Hamburg, Germany; that during the entire period of his imprisonment he was led and had reasonable cause to believe, and did believe, that the Nazi officials had designs on his life and business interests; that after January, 1937, while so imprisoned, he was compelled by Nazi officials, by duress and threats of severe bodily harm, indefinite imprisonment and death, as well as business ruin, to execute documents purporting to transfer and to sanction the transfer of his shares in the Red Star Line to one Boeger; that Boeger in consequence of the authority purportedly conferred by the above documents took control of Red Star Line, undertook the liquidation and disposition of the assets thereof, and transferred the same to the Holland-America Line without fair and adequate consideration; that the defendant came into possession and control of the assets of Red Star Line with full knowledge of plaintiff's imprisonment, and that it knew or should have known that the plaintiff had been compelled by the duress to execute the documents, and that the assets of the Red Star Line came into the defendant's possession in consequence of the above coercion. The complaint further alleged that in or about June, 1939, the defendant converted the assets of Red Star Line to its own use and since that time had enjoyed the benefits thereof.

The original complaint was amended on August 10, 1946, so as to add causes of action for the recovery of insurance moneys paid to Holland-America in connection with the loss of one of the vessels and for the recovery of the proceeds of the sale of the other.

On December 5, 1946, D.C., 6 F.R.D. 297, defendant was permitted to implead Chemical Bank & Trust Company which had warranted title and made representations to defendant as to the authority of the signatories to the conveyances.

In another suit entitled Bernstein v. Van Heyghen Freres Societe Anonyme, Bernstein had made substantially the same charges against the defendant therein as were asserted in his original complaint in the case at bar. In dealing with that litigation on appeal to this court we held that we would not pass upon charges of wrongful conduct by officials of a foreign state, so long as they purported to act as officials and irrespective of the foreign law under which they acted, 2 Cir., 163 F.2d 246. We affirmed a judgment of the District Court dismissing the complaint in that action upon the above ground and a petition to the Supreme Court for a writ of certiorari was denied. 332 U.S. 772, 68 S.Ct. 88.

After the foregoing decisions in the Van Heyghen case, Bernstein moved in the present suit to serve a second amended complaint in which he omitted his former allegations of duress by Nazi officials and attempted to set forth duress in very general terms and without revealing the source. He at the same time applied to the District Court for leave to intervene as a party-plaintiff in his capacity as temporary New York receiver of Red Star Line, a position to which he had been appointed by the New York Supreme Court in an ex parte proceeding which he had instituted in order to obtain intervention in the suit at bar.

The defendant Holland-America Line and the third-party defendant Chemical Bank & Trust Company moved to dismiss the action on the ground that it was barred by the statute of limitations and also on the merits because there was no sufficient allegation of duress. The District Court disposed of these motions by the defendants as well as the motions of the plaintiff to intervene as temporary receiver, and to file a second amended complaint. It granted the motion to file a second amended complaint, but held that the claims were barred by the New York statute of limitations and that the plaintiff should not be allowed to intervene as temporary receiver because under the Regulations and Rulings of the United States Treasury Department issued pursuant to the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq., his appointment by the New York court was null and void unless he could procure a federal license. It accordingly concluded that the "complaint, as deemed amended, must be dismissed." D.C., 76 F.Supp. 335.

In April, 1948, the plaintiff moved for a rehearing of the judge's decision, claiming

that the New York Legislature had amended Section 13 of the New York Civil Practice Act in such a way as to toll the statute of limitations and enable plaintiff to proceed with the present action. He accompanied the motion by a further proposed amended complaint in which his allegations as to duress were somewhat extended. The judge held, D.C., 79 F.Supp. 38, that the legislative amendment of April, 1948, did not toll the statute of limitations as regards Bernstein because the latter was a resident of New York and the amendment was only applicable to nonresidents. He also denied the application for leave to serve the proposed amended complaint for the reason that it came too late. He reaffirmed his former ruling denying intervention to the plaintiff as temporary receiver and directed judgment dismissing the action, from which judgment the plaintiff is here on appeal. He also dismissed the third-party action by Holland-America Line against Chemical Bank & Trust Company and the former has appealed from the order to that effect.

### Statute of Limitations.

It is unnecessary to determine whether the three-year or six-year statute of limitations of the State of New York, Civil Practice Act, §§ 48, 49, applies in the case at bar, since in our view either statute would be tolled by the amendment of April, 1948, to Section 13 of the Civil Practice Act. Section 13, with the amendment italicized, reads as follows:

"Limitation where cause of action arises outside of the state. Where a cause of action arises outside of this state, an action cannot be brought in a court of this state to enforce such cause of action after the expiration of the time limited by the laws either of this state or of the state or country where the cause of action arose, for bringing an action upon such cause of action, except that where the cause of action originally accrued in favor of a resident of this state, the time limited by the laws of this state shall apply; *and except that where the cause of action arose in a foreign country with which the United States or any of its allies was then or subsequently at war, or in territory then or subsequently occupied by the government of such foreign country, the period during which such foreign country was at war with the United States or any of its allies, or during which such territory was so occupied, is not a part of the time limited in this article for commencing the action; * * **"*

The conclusion of the trial judge that the New York statute, as amended in April, 1948, did not toll the statute of limitations because it applied only to non-residents and Bernstein was at all times a resident of New York seems unwarranted. In the first place, Section 13 begins with the descriptive words as to its contents, "Limitation where cause of action arises outside of the state," which apparently embrace both residents and non-residents. It then proceeds to apply the New York period of limitation to residents of the state where a cause of action originally accrued in the latters' favor and follows this by an exception, apparently a general one, which provides that where a cause of action arose in a foreign country with which the United States or its allies was then or subsequently at war, or in territory then or subsequently occupied by the government of such foreign country, the period during which such foreign country was at war should not be "a part of the time limited in this article for commencing the action." We think it improbable that a resident was placed in a position less favorable than a non-resident in respect to the tolling of the statute during wartime. But the statute itself applies in terms to both residents and non-residents. Under such circumstances we find no justification for adopting an argument based upon its early legislative history. We therefore hold that the New York statute was tolled by the amendment, and so far as the District Court dismissed the complaint as barred by the statute of limitations, it was in error.

### Constitutionality of the Amendment to Section 13.

It is argued that the amendment, if so construed as to revive the plaintiff's claim which theretofore was barred, is unconstitutional on the grounds that it created an arbitrary classification and divested defendant's rights by its retroactive effect. We do not think that it was arbitrary for

the New York Legislature to toll the statute of limitations during the war period. There would seem to be ample reason for concluding that during such a period the difficulties of preparing and conducting a litigation over a claim which arose because of transactions occurring in Germany were sufficiently evident to justify the Legislature in taking notice of that fact and extending the time within which to bring suit.

Any interference with defendant's right to invoke the statute of limitations caused by the retroactive legislation was within the powers of the Legislature and did not violate due process. This seems to have been settled, so far as the Federal Constitution is concerned, by the decisions of the Supreme Court in Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628, and Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483. The further contention is made that the retroactive amendment was bad under the New York Constitution. This seems unwarranted in view of the decision of the New York Court of Appeals in Robinson v. Robins Dry Dock & Repair Co., 238 N.Y. 271, 144 N.E. 579, 36 A.L.R. 1310. There a retroactive amendment like the one before us was held valid and the general observation was made that

such was the New York law unless a retroactive enlargement of the statute of limitations could be regarded as unjust or unreasonable in the particular case. We cannot regard the amendment of April, 1948, which we have quoted, as barred by the New York Constitution.

Sufficiency of the Allegations of Duress.

■ After alleging duress by Nazi officials in the original complaint the plaintiff, as we have already stated, abandoned these allegations, apparently because of our decision in Bernstein v. Van Heyghen Freres Societe Anonyme, 2 Cir., 163 F.2d 246, certiorari denied 332 U.S. 772, 68 S.Ct. 88, and submitted a second amended complaint setting forth duress without mentioning Nazi officials. This complaint was accepted by the District Judge for the purpose of passing on whether the claim was barred by the New York statute of limitations, but with the reservation that the allegations of duress appeared entirely insufficient, but possibly might be cured by an amended complaint. The plaintiff submitted a third amended complaint in connection with his argument that the amendment of April, 1948, tolled the statute of limitations. This proposed third amended complaint had the allegations of duress appended in the margin.[1] The court denied the ap-

---

[1] 8. In February 1937 the plaintiff, being of the Jewish faith and imprisoned in Germany on alleged suspicion of violation of German foreign exchange regulations, and cognizant of the predatory practices affecting individuals of his faith then occurring in Germany and now matter of common knowledge, was given to understand by his own attorneys, and led to believe, that it was imperative for his personal safety that he put someone other than himself in charge of his two steamship lines, one of which was said Red Star Line. Accordingly the plaintiff designated as manager of the two said steamship lines, for a limited period, a person suggested to him, one Marius Boeger, a retired German non-Jewish steamship operator, who was a private individual and not a government official or agent. Thereafter his attorneys and others whom he trusted again came to him, while he was still imprisoned, and gave him to understand that unless he executed further documents, offering completely to divest himself not only of control but also of his ownership of said Red

Star Line and his other steamship line, the gravest consequences might ensue; more particularly, he was led to and did with good reason believe that, quite apart from the outcome of charges by that time lodged against him (of which he knew himself to be innocent), unless he signed the said documents not only would he be ruined financially, but if he continued obdurate that the liberty and lives of members of his family then in Germany would be imperiled and that he (then a declarant for American citizenship) might expect never to be permitted to leave Germany alive. The reality and imminence of these perils, reiterated to him by persons in whom he had complete confidence, his own experiences in the course of his imprisonment, and his knowledge of violence done with impunity in Germany to the property and persons of others of his faith, undermined his will and brought about a situation where, in order to escape the extreme peril in which he with good cause believed both he and members of his immediate family stood, both as to property and life, the plaintiff yield-

plication to file a third amended complaint because it came too late. We think the judge could properly have denied it on the ground that the plaintiff failed to specify the class of persons which exercised duress, but he apparently did not deny it for that reason. He had already suggested, in respect to an equally vulnerable second complaint, that it might be amended.

Because of our decision in the Van Heyghen case and the plaintiff's former flat allegations that the duress was caused by Nazi officials, any amendment must contain an allegation that the duress was not caused by the action of such officials and in addition should specify with reasonable detail the persons by whom, and the manner in which, the duress was exercised. The fact that statements were made to the plaintiff advising him of danger to the lives and property of himself and his family would not satisfy the test laid down in the Van Heyghen case, if in fact that danger flowed from the acts or threatened acts of Nazi officials. Nor would it show duress by anyone if the plaintiff's lawyer or others merely conveyed to him their belief based upon an independent appraisal of conditions in Germany that there was danger to himself, his family, or his property, if he did not part with his stock.

If the plaintiff is able to bring in the Red Star Line or its New York representative, a consideration which we shall later deal with, he should be allowed to serve a further amended complaint provided he can do so in conformity with the requirements we have stated.

### Lack of Necessary Parties.

█ The defendants have argued that the plaintiff has no standing to sue as an individual because he is merely asserting wrongs to the Red Star Line, of which he was a stockholder. This overlooks the fact that the basis of his claim is that he was deprived of his stock by duress and only because of this is he seeking to follow the proceeds of property of the Red Star Line in the hands of the Holland-America Line, which is charged with acquiring those proceeds with notice of the duress. To assert any claim at all under such circumstances, the plaintiff necessarily had to be a party to the suit, for its basis depended on a showing of duress leveled upon him as an individual. But, while the plaintiff, to succeed, would have to set aside the transfer of his stock to Boeger, he is no longer seeking to obtain that stock but to secure the proceeds of ships transferred by Red Star to the Holland-America Line by means of the acquisition of plaintiff's stock by Boeger and the dissolution of Red Star. These proceeds are not the property of the plaintiff but are assets of the Red Star Line, first applicable to payment of its debts, some of which evidently exist [Transcript of Record, pp. 153–54], and thereafter to the claim of the plaintiff as sole stockholder. Under such circumstances, a representative of the Red Star Line is in our opinion a necessary party to this suit and may properly be the New York temporary receiver, if the latter has lawful authority to recover the proceeds of sale on behalf of the Red Star Line.

█ The defendants argue that suit by the New York receiver cannot lie because a liquidator of the Red Star Line was appointed in 1945 by the British Military Government in succession to an earlier liquidator appointed before World War II. We cannot see how the existence of a liquidator in Germany prevents the reduction to possession of a claim against the Holland-America Line, a corporation doing business in New York State, by means of

---

ed, and executed, first, documents purporting to offer and then, later, on further reiteration, while he was still imprisoned, further documents purporting to transfer in effect to said Boeger as "trustee" all of plaintiff's shares in the said Red Star Line. The last of such documents was executed shortly prior to November 1, 1938.

9. Plaintiff had reasonable cause to, and did, believe himself and members to his family to be imminently exposed to the dangers referred to in paragraph "8" hereof, and in the reality of the consequences threatened if he failed to execute the said documents, particularly the latter of them. His execution of the said documents was actuated solely by fear of the consequences thus threatened, and he executed the said documents to avoid such consequences and under the extreme duress and coercion of such fear, which deprived him of the exercise of his free will.

a receiver appointed in New York. The right of such a receiver to litigate the claim against Holland-America Line is given by Section 977-b of the New York Civil Practice Act and under that section the receivership court is required to furnish all proper safeguards for persons not before it. That the existence of a receiver or liquidator in a foreign country does not preclude a suit in this country has been decided by the New York Court of Appeals in Oliner v. American-Oriental Banking Corporation, 277 N. Y. 588, 13 N.E.2d 783.

█ The assertion of a claim by the New York receiver is further objected to on the ground that it is barred by the statute of limitations. This position cannot be sustained because the time had not run when the receiver sought to intervene in November, 1947, for even the New York three-year statute, if that would apply, was tolled both under the amendment of April 1948 and Section 977-b, subd. 18 of the New York Civil Practice Act.

█ The defendants further object to the intervention by the New York receiver on the ground that the Paris Agreement on Reparations among the eighteen Western Powers, effective January 14, 1946, entitled each signatory country to a percentage share of all forms of German reparations and each such country was entitled to use toward its share German external assets having a situs in such country. This in our opinion is not a bar to the assertion of the receiver's claim. Not only do we have no reason to suppose that any of the signatory countries have seized the claim of the Red Star Line against Holland-America Line, but Parts III-J and III-K of the Rules of Accounting for German External Assets, as approved on November 21, 1947, by the Assembly of the Inter Allied Reparation Agency, provide that a signatory country shall be entitled to exclude from the sum total of German assets charged to it under the treaty:

"J. Assets in a Signatory country owned by any body of persons, organised under the laws of Germany, in which body there are non-German interests, to the extent that such assets proportionate to the non-German interests in the body are released to such non-German interests.

"K. Any other direct or indirect non-German interest in assets which interest has not been seized or which has been or will be released to such non-German interest."

We do not say that if an authorized representative of the United States Government should attempt to seize the claim to the proceeds of the ships, such an action would not preclude further adjudication in the present litigation. Such a situation, if it arose, would seem to be a matter for disposition by the trial court in view of facts which might be established.

█ . Finally, the defendants argue that the receiver may not be brought into the action or pursue the claim on behalf of the Red Star Line without a license from the Secretary of the Treasury. The latter's General Ruling No. 11A, promulgated under Executive Order No. 8389, 12 U.S.C.A. § 95a note, issued under Section 5(b) of the Trading with the Enemy Act explicitly requires a license for "the transfer, or withdrawal of, or other dealing in" any property in the United States of a German corporation. Paragraph 4 of General Ruling No. 12 deals with the effect of the license requirements on judicial proceedings and is set forth in the margin.[2] In Public Circular No. 31, issued August 2, 1946, the Treasury Department in referring to General Ruling No. 12, said that "the judicial process cannot, without a license or other authorization from the Secretary of the Treasury, operate to trans-

[2] Any transfer affected by the Order and/or this general ruling and involved in, or arising out of, any action or proceeding in any Court within the United States shall, so far as affected by the Order and/or this general ruling, be valid and enforceable for the purpose of determining for the parties to the action or proceeding the rights and liabilities therein litigated: Provided, however, That no attachment, judgment, decree, lien, execution, garnishment, or other judicial process shall confer or create a greater right, power, or privilege with respect to, or interest in, any property in a blocked account than the owner of such property could create or confer by voluntary act prior to the issuance of an appropriate license.

fer or create any interest in blocked property." The claim sought to be asserted by the New York receiver was such an interest. Public Circular No. 31 further stated that:

"In view of the fact that the Alien Property Custodian has publicly announced his intention of vesting all German and Japanese property in the United States, it will be the general policy of the Treasury Department not to grant any licenses authorizing the creation or acquisition through legal process of any interest in blocked German or Japanese property."

It is also evident that a license was necessary in order to justify the appointment of the receiver and his assertion of a claim against Holland-America Line on behalf of the Red Star Line under our decision in Clark v. Propper, 2 Cir., 169 F.2d 324. The opinion of the New York Court of Appeals in Singer v. Yokohama Specie Bank, 293 N.Y. 542, 58 N.E.2d 726, allowed a suit to proceed to judgment without a license with the qualification, however, that the judgment therein could not be enforced without obtaining one. This decision is not controlling upon a court of the United States construing the meaning and effect of federal regulations issued under a federal statute. We accordingly hold that the appointment of the state receiver and his assertion in the United States District Court of his claim to blocked property must be validated by a license of the Treasury Department if he desires to proceed further.

### Impleading of Chemical Bank & Trust Company

 The plaintiff appeals from the order bringing in Chemical Bank & Trust Company as a third-party defendant against which the defendant Holland-America Line seeks recovery in case the latter should be held liable to restore the proceeds realized from the ships. This claim does not represent a right of the plaintiff against the Chemical Bank & Trust Company but is only ancillary to the plaintiff's suit for the purpose of adjusting the rights of Holland-America Line and Chemical Bank & Trust Company inter sese. In such a situation, diverse citizenship between the origi-

nal plaintiff and the third-party defendant is not necessary to support jurisdiction based upon diverse citizenship between the plaintiff and the main defendant. Sheppard v. Atlantic States Gas Co. of Pennsylvania, 3 Cir., 167 F.2d 841. See also Friend v. Middle Atlantic Transportation Co., 2 Cir., 153 F.2d 778, 779, 780. The claim of Holland-America Line (a Dutch corporation) against the third-party defendant, Chemical Bank & Trust Company (a New York corporation) is a claim of an alien against a citizen of New York, over which the District Court would have jurisdiction.

For the reasons we have given, the judgment denying the motion of the receiver to intervene and assert any claims on behalf of the Red Star Line is affirmed, provided, however, that if the receiver obtains a license from the Treasury Department within ninety days from the issuance of the mandate upon this opinion, validating his appointment as temporary receiver and his right to assert claims on behalf of Red Star Line, he shall be allowed to intervene. The judgment dismissing the second amended complaint and denying the motion for leave to serve a third amended complaint is affirmed, provided, however, that if the plaintiff as receiver of the Red Star Line obtains a license in the manner required above he may, both individually and as receiver, file a further amended complaint alleging duress in accordance with the requirements of this opinion.

The order allowing Holland-America Line to bring in Chemical Bank & Trust Company is affirmed. The order dismissing the third-party complaint of Holland-America Line is affirmed, subject, however, to the right of the third-party plaintiff to reassert its claims if the plaintiff obtains a license and files a third amended complaint in accordance with the provisions of this opinion. None of the parties is awarded costs.

### Supplemental Opinion.

Since the writing of the foregoing opinion, we are informed by plaintiff's counsel that a license has been issued by the Office of Alien Property, which under Executive Order No. 9989, 50 U.S.C.A.Appendix, § 6 note, has been substituted for the Treasury Department as the governmental agen-

cy controlling blocked property, authorizing the plaintiff as receiver to assert claims on behalf of Red Star Line. The meaning and effect of this license—a copy of which has been furnished to this court—will under the terms of our opinion be a matter to be dealt with by the District Court.