BERNSTEIN

v.

N. V. NEDERLANDSCHE–AMERI-
KAANSCHE STOOMVAART–MAAT-
SCHAPPIJ (CHEMICAL BANK &
TRUST CO., third-party defendant).

United States District Court
S. D. New York.

Dec. 9, 1953.

See, also, D.C., 15 F.R.D. 32.

Bennet, House & Couts, New York City, for plaintiff.

Burlingham, Hupper & Kennedy, New York City, for third-party plaintiff.

Shearman & Sterling & Wright, New York City, for third-party defendant.

DIMOCK, District Judge.

This is a motion to dismiss plaintiff's third amended complaint. Plaintiff, Bernstein, suing as temporary receiver of the New York assets of the Red Star Line, a dissolved German limited liability company, and individually as its sole stockholder, seeks to recover property which he alleges he was forced to transfer in Nazi Germany in 1937. This action was originally instituted by plaintiff in his individual capacity only. He later moved to intervene as temporary New York receiver of the Red Star Line.

The Court of Appeals of this Circuit ruled that a representative of the Red Star Line was a necessary party, but affirmed the denial of plaintiff's motion to intervene on the ground that plaintiff lacked the license required by the regulations promulgated under Executive Order No. 8389, 12 U.S.C.A. § 95a note, issued under Section 5(b) of the Trading With the Enemy Act, 50 U.S.C.Ap-

pendix, § 5(b), for "the transfer, or withdrawal of, or other dealing in" German corporate property located in this country. Bernstein v. N. V. Nederlandsche-Amerikaansche, etc., 2 Cir., 173 F.2d 71, 76–78.

The Court of Appeals also affirmed the dismissal of plaintiff's second amended complaint on the ground that American courts would not pass upon the validity of the governmental acts of a foreign sovereign within its own territory, even if such acts were illegal under the foreign law, and that vague, general allegations of duress by unidentified private persons were insufficient to state a claim of nongovernmental duress. 173 F.2d 75–76.

The Court of Appeals stated, however, that if plaintiff obtained the appropriate license he should be permitted to intervene and to file a third amended complaint which complied with the requirements stated in the court's opinion for allegations of private duress. Plaintiff has filed a third amended complaint alleging the issuance of a license and designed to comply with the requirements of the Court of Appeals.

Defendant, Holland-America Line, contends that neither the allegations with respect to the license which plaintiff alleges he has acquired from the Office of Alien Property during the time prescribed by the Court of Appeals nor the allegations with respect to the enforced transfer of the property comply with the requirements of the Court of Appeals, and moves to dismiss the complaint on those grounds. Third-party defendant, Chemical Bank & Trust Company, supporting defendant's position, seeks the dismissal of the third-party complaint.

I turn first to an examination of plaintiff's license in the light of the requirements laid down by the Court of Appeals. That Court held in effect that the appointment of the receiver was invalid in the absence of a license, as would be his assertion of a claim against Holland-America Line, and added:

"We accordingly hold that the appointment of the state receiver and his assertion in the United States District Court of his claim to blocked property must be validated by a license from the Treasury Department if he desires to proceed further."

It is obvious that the Court of Appeals intended to permit a nunc pro tunc validation of the appointment of the receiver if a proper license could be obtained.

Defendants say that the license actually obtained would have been insufficient to justify the appointment of the receiver even if it had been issued prior to the appointment and that the license is insufficient to justify his assertion of a claim against the Holland-America Line on behalf of the Red Star Line. Defendants' argument rests upon the assumption that the appointment of a temporary receiver is invalid unless the license permits the consummation of all of the powers with which the state statute endows the temporary receiver and the permanent receiver who will presumably succeed him. Since the license specifically prohibits the licensee from exercising the power given to the permanent receiver by section 977–b, subdivision 16, of the New York Civil Practice Act to distribute the assets which he collects to the creditors and stockholders of the corporation it is argued that the appointment is invalid.

That subdivision provides that upon settlement of the receiver's account the court must direct the payment of first, the costs and expenses and, second, the allowed claims of creditors and that the surplus shall be distributed to the stockholders.

Plaintiff's license provides:

"Notwithstanding General Ruling No. 11A, as amended, a license is hereby issued removing the restrictions of Executive Order No. 8389, as amended, in so far as they may affect your assertion and enforcement, as temporary receiver under

Section 977–b of the Civil Practice Act of the State of New York of the property and assets of Red Star Linie G.m.b.H., of claims of Red Star Linie G.m.b.H. to property in accordance with your power and authority under Section 977–b. This license is not intended, however, to permit you to acquire physical possession or title to the property or assets of Red Star Linie G.m.b.H. or to make any distribution of such assets to any persons deemed entitled thereto as a result of the receivership action. Any judgments which you may obtain and any property which you may acquire in execution of such judgments shall remain subject to the blocking controls and this Office reserves its right to vest at any stage if it should determine that such vesting action is appropriate."

■ In my opinion, the ultimate powers of the receiver are not so interrelated with the appointment of the temporary receiver that an appointment is invalid unless there is assurance that the receiver will be permitted to carry out all of his statutory powers.

I am satisfied that the Court of Appeals required no more than the consent of the Treasury Department [1] to the appointment of the receiver and to the assertion of the claim in the suit so that, having decided that, under the law of New York, it is not essential to the validity of the appointment of a temporary receiver that the receiver ultimately appointed have requisite federal authority to distribute the property, I hold that the complaint is sufficient insofar as the allegations with respect to the appointment and powers of the receiver are concerned.

The combined practical effect of the power to sue and the limited license is that the receiver rather than the representative of the Office of Alien Property will attempt to establish the cause of action against the Holland-America Line on behalf of the Red Star Line. Whether the avails of any judgment obtained would go to the creditors and the plaintiff as stockholder of the Red Star Line or would go to the Office of Alien Property would depend upon further action of that Office with respect to the property.[2]

Defendant Holland-America Line asserts, without elaboration or citation of authority, that section 977–b of the New York Civil Practice Act cannot be utilized for the purpose of recovering assets for the benefit of the United States. I see no impediment in theory or practice to the seizure of the avails of the judgment by the Office of Alien Property if and when that is the determination of the executive.

In view of my conclusion that plaintiff's intervention as temporary receiver is now proper, I turn to provisions of the complaint which allege that the transfer of the property was the result of undue pressure exerted upon Bernstein.

On this subject the Court of Appeals said, 173 F.2d 71, 76:

"Because of our decision in the Van Heyghen case [Bernstein v. Van Heyghen Freres Societe Anonyme, 2 Cir., 163 F.2d 246, certiorari denied 332 U.S. 772, 68 S.Ct. 88, 92 L.Ed. 357] and the plaintiff's former flat allegations that the duress was caused by Nazi officials, any amendment must contain an allegation that the duress was not caused by the action of such officials and in addition should specify with reasonable detail the persons by whom, and the manner in which, the duress was exercised. The fact that statements were made to the plaintiff advising

1. Jurisdiction over blocked property was transferred to the Office of Alien Property by Executive Order No. 9989, 50 U.S.C.A. Appendix, § 6 note, shortly after the decision of the Court of Appeals.

2. General License No. 101, 18 F.R. 3687, issued by the Office of Alien Property on June 24, 1953, removed blocking controls on West German property. In view, however, of the prior expiration of the ninety-day period allowed by the Court of Appeals for acquisition of the license, I cannot give effect to this development.

him of danger to the lives and property of himself and his family would not satisfy the test laid down in the Van Heyghen case, if in fact that danger flowed from the acts or threatened acts of Nazi officials. Nor would it show duress by anyone if the plaintiff's lawyer or others merely conveyed to him their belief based upon an independent appraisal of conditions in Germany that there was danger to himself, his family, or his property, if he did not part with his stock."

For my present purposes the important statements made by the Court of Appeals in outlining the requirements of a valid complaint are the direction that any amendment "should specify with reasonable detail the persons by whom, and the manner in which, the duress was exercised" and the additional caution: "nor would it show duress by anyone if the plaintiff's lawyer or others merely conveyed to him their belief based upon an independent appraisal of conditions in Germany that there was danger to himself, his family, or his property, if he did not part with his stock."

I gather from this statement that duress would not be made out even though it were pleaded that an informant who knew the facts told plaintiff that if he refused not only would he never get out of Germany alive but the lives of his family would be imperiled. I think that what the Court of Appeals had in mind, as distinguished from "independent appraisal", was a statement made by someone interested in the result for the purpose of inducing action.

The complaint contains no allegation of any statements made to Bernstein by anyone with an interest in the result until paragraph 24 where the complaint, for the first time, deals with statements by one Kollmar to Bernstein made after Holland-America had enlisted Kollmar's interest to secure for itself the Red Star Line property. These allegations, expanded to recite facts incorporated by reference, are paraphrased in the next paragraph.

The Holland-America Line was interested in acquiring two vessels of the Red Star Line and initiated efforts to secure them for itself knowing that Bernstein owned the line. At some time the Holland–America Line approached Kollmar and one Boeger "and enlisted their interest to secure for itself the two vessels and other assets of the Red Star Line." Thereafter and while Bernstein was serving a sentence in prison Kollmar told him that "he was now required to sign a document actually transferring" to Boeger his Red Star Line shares, which he had already irrevocably offered to transfer to Boeger. Kollmar further told Bernstein that refusal to sign the document of actual transfer would automatically destroy any hope of Bernstein's getting out of Germany alive. Bernstein believed Kollmar's statements to be true and signed the document solely by reason of the fear that unless he did so he would never get out of Germany alive and the lives of members of his family would be gravely imperiled.

■ I believe that by these allegations plaintiff has met the requirements of the Court of Appeals. The fact that Holland-America enlisted Kollmar's interest to secure the property for itself took Kollmar out of the "independent" class. From then on he was not a mere bearer of evil tidings. He had an interest in influencing Bernstein by the statements he made. The problem is made a little difficult by the fact that there is no allegation that Kollmar stated that he or anyone for whom he was acting had power to protect Bernstein if he signed or to harm him if he refused. It is hard to say that one threatens something over which he has no control but I think that this is a situation where, to make out a case of duress, it is not necessary to establish that the person sought to be charged threatened anything in the usual acceptance of the word. By fair intendment plaintiff has alleged that Kollmar, having an interest in getting Bernstein to sign, told Bernstein that some unspecified person or persons would harm him unless he

signed. It is conceivable that Kollmar and his principal, Holland-America, were completely independent of the person or persons who would inflict this harm and that Kollmar proposed only to take advantage of Bernstein's reaction to the news that someone else would harm him if he did not sign. The distinction between that situation and the conventional "threat" where the person charged with the duress has power to inflict the harm is so fine that I have been led to the conclusion above indicated that plaintiff has pleaded duress within the requirements of the Court of Appeals.

In view of my conclusion that the allegations of the complaint set forth a claim in private duress, it is not now absolutely necessary for me to pass upon the effect of a State Department press release issued since the decision of the Court of Appeals and pleaded as part of the third amended complaint in what is evidently an attempt to reopen the door for proof of governmental duress. Since, however, most of the argument on this motion was directed to this point, and since it is unlikely that plaintiff will content himself with offering **proof** of private duress alone at the trial, I think it will be helpful to counsel if I set forth my view here. The Court of Appeals concluded that the legality of the acts of Nazi officials in Germany was not justiciable in American courts. This conclusion was based on its holding in a prior suit by this plaintiff, Bernstein v. Van Heygen Freres Societe Anonyme, 2 Cir., 163 F.2d 246, supra. In the Van Heygen case, the Court of Appeals indicated that, since this "acts of state" doctrine [3] is essentially a matter of international relations on which our Executive is the final authority, if our Executive indicated an affirmative intention to lift this commonly accepted judicial restraint, our courts would follow executive policy. Plaintiff has attached to his complaint a copy of a press release from the State Department which was issued more than a month after the decision of the Court of Appeals. This document contains a letter from the Acting Legal Adviser of the State Department. The letter, addressed to counsel for plaintiff in reference to this very action, states:

> "The policy of the Executive, with respect to claims asserted in the United States for the restitution of identifiable property (or compensation in lieu thereof) lost through force, coercion, or duress as a result of Nazi persecution in Germany, is to relieve American courts from any restraint upon the exercise of their jurisdiction to pass upon the validity of the acts of Nazi officials."

Defendants contend that the mandate of the Court of Appeals sets forth "the law of the case" and, therefore, precludes me from considering any changes in law or fact which have occurred since its issuance, including this state Department release.

■ It is a well established doctrine that the mandate of an appellate court is binding on the lower court and that the lower court is powerless to redetermine any matters passed upon by the appellate court. The reason for such a rule is obvious—an appeal to an inferior tribunal from the decision of an appellate court cannot be permitted. In re Potts, 166 U.S. 263, 17 S.Ct. 520, 41 L. Ed. 994. This doctrine has been applied even to the extent of precluding a lower court from passing on newly discovered evidence without prior application for permission from the appellate court. Id. Although Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., now empowers a federal trial court, in criminal cases, to take cognizance of newly discovered evidence in spite of the strict mandate rule, Harrison v. United States, 5 Cir., 191 F.2d 874, no such exception seems to exist in civil cases. The other situation closely analogous to the instant case is that of a clear change in law after

---

3. Underhill v. Hernandez, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456; American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726.

the appellate decision. Higgins v. California Prune & Apricot Grower, 2 Cir., 3 F.2d 896, decided by the Court of Appeals of this Circuit, was such a case. In the Higgins case, the District Court had dismissed a bill for an injunction against a state court proceeding on the ground that it lacked jurisdiction. On appeal, the Court of Appeals reversed, 2 Cir., 282 F. 550. After the decision of the Court of Appeals, the Supreme Court of the United States, Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, in a similar case, ruled that federal district courts do lack jurisdiction to enjoin state court proceedings. The District Court followed the law as stated by the Court of Appeals and granted an injunction, in spite of the decision of the Supreme Court. On the appeal, the Court of Appeals indicated approval of that action: "The District Court declined to consider the effect of that decision [of the Supreme Court], feeling bound by the mandate of this court, rightly, as we think." Higgins v. California Prune & Apricot Grower, 2 Cir., 3 F.2d 896, 897.

■ It seems to me that these decisions, which indicate that a lower court should refuse to depart from the ruling of an appellate court in the same case even though new evidence has been discovered or the law has been changed, invest the appellate court's mandate with undue sanctity. I am constrained to follow them, however, and I can think of no substantial distinction between them and the case at bar where the change alleged has been a change in an executive ruling. Upon the trial, therefore, I shall refuse to consider the State Department's press release unless plaintiff has, in the meantime, obtained from the Court of Appeals an amendment of its mandate, or instructions as to the interpretation of its mandate, which would make such consideration proper.

Pursuant to the above quoted requirement of the Court of Appeals that any amendment of the complaint "must contain an allegation that the duress was not caused by the action of [Nazi] officials", the third amended complaint alleges: "The duress under which plaintiff acted in executing said documents was not caused by the action of any Nazi officials." I accept this as compliance with the mandate of the Court of Appeals in this respect and shall, on the present state of the pleadings, despite any other allegations in the complaint, refuse to consider official duress as a basis for recovery by the plaintiff. If, therefore, plaintiff desires to take advantage of any further directions of the Court of Appeals in this respect, a further amendment of the complaint will be necessary.

Motion to dismiss denied.