**BANCO NACIONAL de CUBA, Plaintiff-Appellant,**

v.

**The FIRST NATIONAL CITY BANK OF NEW YORK, Defendant-Appellee.**

Nos. 798, 799, Dockets 32533, 33864.

United States Court of Appeals, Second Circuit.

Argued March 18, 1971.

Decided April 27, 1971.

Victor Rabinowitz, New York City (Rabinowitz, Boudin & Standard, New York City, on the brief), for plaintiff-appellant.

Henry Harfield, New York City (Shearman & Sterling, Herman E. Compter and James B. Keenan, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, HAYS, Circuit Judge, and BLUMEN-FELD, District Judge.*

LUMBARD, Chief Judge:

This case comes to us on remand from the Supreme Court for our reconsideration in light of the views of the Department of State expressed subsequent to our original decision which was filed on July 16, 1970. Banco Nacional de Cuba v. First National City Bank of New York, 431 F.2d 394 (2d Cir. 1970). For the reasons stated below, we adhere to our prior decision and reverse and remand to the district court.

In the original action, Banco Nacional de Cuba brought suit against First National City Bank of New York in the Southern District. After the Castro government of Cuba had expropriated First National City's properties there pursuant to Cuban Law No. 851, First National City had sold collateral securing a ten-million-dollar loan it had made to Banco Nacional prior to the change in Cuba's government. From the sale of that collateral, First National City had received an amount—conceded to be at least $11,892,448 and perhaps as much as $12,412,000—which was substantially in excess of that required to discharge the ten-million-dollar principal sum and the four per cent interest thereon. Banco Nacional's suit was to recover the excess realized on that sale.

In the district court, First National City raised a series of counterclaims and setoffs based principally on the contention that, since the Cuban govern-

ment had confiscated its properties in Cuba in violation of international law, it was entitled to retain the excess on the sale of the collateral as an offset against the value of its confiscated properties. Judge Bryan in the Southern District granted summary judgment to First National City. Banco Nacional de Cuba v. First National City Bank of New York, 270 F.Supp. 1004 (S.D.N.Y. 1967).

On appeal, we reversed the district court's judgment, holding that Cuba's confiscation of First National City's properties in Cuba was an act of state and that under Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), the act of state doctrine foreclosed judicial inquiry into the validity of that confiscation under international law. We held further that the Hickenlooper Amendment to the Foreign Assistance Act of 1964 [1] did not apply here so as to defeat the act of state doctrine and thereby to give a lender such as First National City the right to apply assets under its control to recoup losses it has suffered by expropriation of its properties in Cuba. Accordingly, we concluded that allowing First National City its claimed offset against the allegedly unlawful expropriation was error; and we remanded to the district court for a factual finding as to the amount by which the proceeds of the sale of the collateral exceeded the amount then owing on the loan—which excess we directed should then be paid to Banco Nacional.

First National City petitioned for a writ of certiorari on October 13, 1970; and on November 17, 1970, the Legal Advisor to the Department of State wrote a letter to the Supreme Court expressing the views of that Department with respect to this case. The State Department's letter is set out in full in an appendix to this opinion. By order dated January 25, 1971, 400 U.S. 1019, 91 S.Ct. 581, 27 L.Ed.2d 630 the Su-

---

* Sitting by designation.

1. 22 U.S.C. § 2370(e) (2), as amended, 79 Stat. 658–659 (Sept. 6, 1965).

preme Court granted certiorari and remanded the case to us without taking any position on the merits. The Supreme Court's order stated in full:

"846 First National City Bank v. Banco National de Cuba. The petition for a writ of certiorari is granted. The judgment of the Court of Appeals is vacated and the case is remanded to the Court of Appeals for reconsideration in light of the views of the Department of State expressed in its letter dated November 17, 1970, and transmitted to this Court by the Solicitor General. In taking this action, the Court is expressing no views on the merits of the case." 39 U.S. L.W. 3321 (January 26, 1971).

Upon reconsideration, we see no reason to change our initial decision on this appeal.

Basically, the State Department's letter of November 17 expresses the view that the act of state doctrine does not bar consideration of a claim for compensation asserted as a defensive counterclaim or offset limited to the amount of a claim made in a United States court by a foreign government, arising out of a relationship between the parties when the act of state occurred, and where the foreign policy interests of the United States do not require application of the doctrine. It suggests that this Court is relieved from any restraint upon the exercise of its jurisdiction to adjudicate First National City's counterclaim arising out of the confiscation of its Cuban assets. The letter states that in his case

"the foreign policy interests of the United States do not require the application of the act of state doctrine to bar adjudication of the validity of a defendant's counterclaim or set-off against the Government of Cuba in these circumstances.

The Department of State believes that the act of state doctrine should not be applied to bar consideration of a defendant's counterclaim or set-off against the Government of Cuba in this or like cases."

First National City argues that this letter constitutes the requisite statement by the Executive Branch which under our decision in Bernstein v. N.V. Nederlandsche-Amerikaansche, etc., 210 F.2d 375 (2d Cir. 1954), relieves the courts from applying the act of state doctrine to bar examination of the validity of the law in question. Because the interpretation of *Bernstein* will be crucial to our determination of the instant case, we set forth the background of *Bernstein* in some detail.

That case involved the alleged confiscation of the property of a single plaintiff, a Jewish German national, by the Nazi German government between 1937 and 1939. Plaintiff alleged that he was compelled by officials of that government, acting through threats of bodily harm, indefinite imprisonment, and death for plaintiff and his family, to assign his property to the German government. Beginning in 1946 the plaintiff sought to attach and recover some of the proceeds of his former property in a suit brought in a state court in New York and removed to the federal district court. In the first *Bernstein* case, Bernstein v. Van Heyghen Freres Societe Anonyme, 163 F.2d 246 (2d Cir.), cert. denied, 332 U.S. 772, 68 S.Ct. 88, 92 L.Ed. 357 (1947), we held, in an opinion by Judge Learned Hand, that the act of state doctrine prevented us from inquiring into the validity of the confiscation of the plaintiff's property by the Nazi government; and we therefore affirmed the district court's dismissal of the complaint. However, in the course of his opinion, Judge Hand said that it was a relevant question "whether since the cessation of hostilities with Germany our own Executive, which is the authority to which we must look for the final word in such matters, has declared that the commonly accepted doctrine which we have just mentioned does not apply." 163 F.2d at 249. After full consideration, we concluded that the Executive Branch had

not in fact acted to relieve the courts of the restraint imposed by the act of state doctrine.

In the second *Bernstein* case, the same plaintiff brought a conversion action against another defendant—a Dutch corporation which, in participation in a plan with officials of the Nazi government, had confiscated and converted his stock in a German liability corporation. In that case, we reaffirmed our holding in the first *Bernstein* case that, because of the lack of a definitive expression of Executive policy, the act of state doctrine prevented judicial examination of official acts of the Nazi government. Bernstein v. N. V. Nederlandsche-Amerikaansche, etc., 173 F.2d 71 (2d Cir. 1949). We did remand the case for the purpose of allowing the plaintiff to allege, if he could, that his property had been seized by persons acting in a private capacity; but we ordered him to refrain from alleging matters which would cause the court to pass on the validity of acts of officials of the German government.

Following that decision, the State Department issued a press release quoting a letter from its Acting Legal Advisor. As the release stated, that letter

> "repeats this Government's opposition to forcible acts of dispossession of a discriminatory and confiscatory nature practiced by the Germans on the countries or peoples subject to their controls; states that it is this Government's policy to undo the forced transfers and restitute identifiable property to the victims of Nazi persecution wrongfully deprived of such property; and sets forth that the policy of the Executive, with respect to claims asserted in the United States for restitution of such property, is to relieve American courts from any restraint upon the exercise of their jurisdiction to pass upon the validity of the acts of Nazi officials."

When the case came before us again, we stated that "[i]n view of this supervening expression of Executive Policy, we amend our mandate in this case by striking out all restraints based on the inability of the court to pass on acts of officials in Germany during the period in question." 210 F.2d 375, 376 (2d Cir. 1954).

First National City argues that *Bernstein* requires that we change our prior decision in the instant case, as we did there, to conform with the State Department suggestions. It contends that since the Executive has now written a "Bernstein letter" exercising its prerogative in the area of foreign policy and suggesting that the act of state doctrine is inappropriate in this case, the policies underlying that doctrine, to which the Supreme Court gave crucial weight in *Sabbatino*, are not present here. According to First National City, judicial resolution of the issue raised by this claim would involve no encroachment on the Executive's prerogatives in the area of foreign affairs; there would be no invasion of the foreign government's sovereignty since Cuba itself sought the process of United States law; and there would be no burden on international trade, nor risk to innocent purchasers, since the sole question is whether one party has defenses that fairly curtail the recovery sought by the other party. Hence, says First National City, this Court should not apply the act of state doctrine here.

First National City contends further that without the bar of the act of state doctrine, we can and must hold in its favor—that it is entitled to set off against Banco Nacional's claim for relief such amount as may be due and owing it from the Cuban government as compensation for its confiscated Cuban property. Its argument in this regard runs as follows: In *Sabbatino*, we held that Cuba's seizures of property of United States nationals pursuant to Cuban Law No. 851 were in violation of international law. Banco Nacional de Cuba v. Sabbatino, 307 F.2d 845 (2d Cir. 1962). That substantive determination was not questioned by the Supreme Court in reversing us in *Sabbatino*, for

the Supreme Court decided only that the Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign. When this restraint was removed by the Hickenlooper Amendment, this Court was "unable to find any convincing reason, based on argument or new authority, for altering our holding in the original appeal," 383 F.2d at 183; and so we reaffirmed our previous holding that the Cuban taking was invalid under international law. Banco Nacional de Cuba v. Farr, 383 F.2d 166 (2d Cir.), cert. denied, 390 U.S. 956, 88 S.Ct. 1038, 19 L.Ed.2d 1151 (1967). When the instant case came here, we felt that the restraint on an examination of validity, recognized in the Supreme Court's decision in *Sabbatino,* precluded the result we had reached in *Farr* because the Hickenlooper Amendment did not apply. Now, says First National City, the situation is altered by the subsequent expression of views by the State Department; and hence, in conformity with our decision in *Bernstein,* we should respond by following our decision on the merits in *Farr,* with respect to the same Cuban law.

We disagree. First National City's arguments are based wholly on the assumption that the so-called *Bernstein* exception to the act of state doctrine applies here since the State Department has written a letter. We feel that that assumption is erroneous. *Bernstein* arose out of a unique set of circumstances calling for special treatment, and hence should be narrowly construed and, insofar as is possible, limited to its facts.

As shown above, the facts in *Bernstein* were most unusual, to say the least, and bear no resemblance to those in the instant case. The acts of state there were performed by a German government with which this country had gone to war and which was no longer in existence at the time of the State Department's letter. Here, on the other hand, we have never been at war with Castro's Cuban government, and that government is both extant and recognized by the United States. Again, unlike the situation here, the State Department's letter in *Bernstein* was written during the aftermath of a great world war; and the Nazi government's actions, such as those of which Bernstein complained, had been condemned throughout the world as crimes against humanity. Furthermore, the letter in *Bernstein* went so far as to indicate that it was the affirmative policy of our government to restitute identifiable property to *all* those victimized by the Nazi confiscation, not merely, as the letter indicates in this case, to those who assert counterclaims or setoffs.

The Executive itself seems to have recognized the uniqueness of *Bernstein,* for the Solicitor General's Brief as Amicus Curiae before the Supreme Court in the *Sabbatino* case states:

"The circumstances leading to the State Department's letter in the *Bernstein* case were of course most unusual. The governmental acts there were part of a monstrous program of crimes against humanity; the acts had been condemned by an international tribunal after a cataclysmic world war which was caused, at least in part, by acts such as those involved in the litigation, and the German State no longer existed at the time of State Department's letter. Moreover, the principle of payment of reparations by the successor German government had already been imposed, at the time of the '*Bernstein* letter,' upon the successor government, so that there was no chance that a suspension of the act of state doctrine would affect the negotiation of a reparations settlement."

There is still another important distinction between *Bernstein* and the case at bar. In *Bernstein,* as should be clear, the balance of equities was almost entirely on the side of the party opposing application of the act of state doctrine, plaintiff, whereas here, as we found in our prior decision in this case,

the contrary is true, since First National City is seeking a windfall at the expense of other creditors. 431 F.2d at 404 n. 18.

In actual practice, as the Solicitor General's Amicus Brief in *Sabbatino* also recognizes, the *Bernstein* exception has been an exceedingly narrow one. Prior to the present case, a "Bernstein letter" has been issued only once—in the *Bernstein* case itself. Moreover, the case has never been followed successfully; it has been relied upon only twice, and in both of those instances, by lower courts whose decisions were subsequently reversed. Banco Nacional de Cuba v. Sabbatino, 307 F.2d 845, 857–858 (2d Cir. 1962), rev'd 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); Kane v. National Institute of Agrarian Reform, 18 Fla.Supp. 116 (Fla.Cir.Ct. 1961), rev'd 153 So.2d 40 (Fla.App. 1963).[2] The Supreme Court has never passed on the validity of the *Bernstein* exception; indeed, in *Sabbatino* it carefully avoided making any such determination. 376 U.S. at 420, 84 S.Ct. 923.

Furthermore, the Court in *Sabbatino* seemed to recognize one of the distinctions described above between a *Bernstein*-type case and a case such as the one at bar. In discussing when the act of state doctrine should be applied, the Court stated that "[t]he balance of relevant considerations may * * * be shifted if the government which perpetrated the challenged act of state is no longer in existence, as in the *Bernstein* case, for the political interest of this country may, as a result, be measurably altered. Therefore, * * * we decide only that the Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit, in the absence of a treaty or other unambiguous agreement regarding controlling legal principles, even if the complaint alleges that the taking violates customary international law." 376 U.S. at 428, 84 S.Ct. at 940. It is clear that the confiscation of First National City's property in Cuba by the extant and recognized Cuban government comes within this holding, and the thrust of the entire decision in *Sabbatino* is contrary to recognizing exceptions to the act of state doctrine in such cases.

For these reasons, we conclude that *Bernstein* is best left narrowly limited to its own peculiar facts and that, despite the State Department's letter of November 17, 1970, the exception to the act of state doctrine created by that case is inapplicable to the case at bar. Rather, we still find persuasive those cogent policy reasons for applying the doctrine which were articulated by Mr. Justice Harlan in *Sabbatino* and set forth in our prior opinion at 431 F.2d 397–99. Since we hold that the State Department's letter here does not bring this case within the narrow *Bernstein* exception, it is plain that that letter does not relieve us from applying the act of state doctrine to bar examination of the validity of the Cuban expropriation of First National City's property there.

2. The *Bernstein* case has, in a few other instances, been cited, but not in relevant situations. For example, in Zwack v. Kraus Bros. & Co., 237 F.2d 255 (2d Cir. 1956) and Republic of Iraq v. First National City Bank, 241 F.Supp. 567 (S.D.N.Y.1965), the case was cited, although no Bernstein letter had been filed and the issue in the cases involved property located in the United States and hence not subject to the Act of State doctrine. In a few other instances the *Bernstein* case has been mentioned in passing, merely as an exception to the act of state doctrine. Banco Nacional de Cuba v. Farr, 243 F.Supp. 957 (S.D. N.Y.1965); F. Palicio y Compania, S.A. v. Brush, 256 F.Supp. 481 (S.D.N.Y. 1966); Wyman v. United States, 166 F. Supp. 766, 769, 143 Ct.Cl. 846 (1958). In Menendez Rodrigues v. Pan American Life Insurance Co., 311 F.2d 429 (5th Cir. 1962), the court treated the correspondence referred to in our decision in *Sabbatino*, as a Bernstein letter; but, as is noted above, our decision in *Sabbatino* was reversed by the Supreme Court.

Accordingly, we adhere to our prior decision and reverse and remand this case for further proceedings consistent with that decision and this.

### APPENDIX

### THE LEGAL ADVISER
### DEPARTMENT OF STATE
### WASHINGTON

November 17, 1970

Honorable E. Robert Seaver
    Clerk of the Court
        United States Supreme Court

Dear Mr. Seaver:

The case of First National City Bank v. Banco Nacional de Cuba is before the Supreme Court on petition for a writ of *certiorari*, No. 846 filed October 13, 1970. The case involves a claim by Banco Nacional for excess collateral it had pledged with City Bank to secure a loan and a counterclaim by City Bank, up to the amount claimed by Banco Nacional, based upon Cuba's expropriation, without compensation, of property of City Bank in Cuba in 1960.[1] The Court

of Appeals for the Second Circuit held that the exception to the Act of State doctrine created by 22 U.S.C. § 2370(e) (2)[2] did not apply to City Bank's claim against Cuba and that the Act of State doctrine, as expressed by the Supreme Court in Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 [84 S.Ct. 923, 11 L.Ed.2d 804] (1964), barred adjudication of City Bank's counterclaim.

The Department of State believes this second holding involves matters of importance to the foreign policy interests of the United States and requests that our views be conveyed to the Supreme Court.[3]

The Executive's role in suggesting that the act of state doctrine should not be applied with respect to a certain case or class of cases has been recognized both by the Department of State and in court decisions. This role, the so-called *Bernstein* exception to the act of state doctrine as applied by United States courts, was first clearly established in Bernstein v. N.V. Nederlandsche Amerikaansche, Etc., 210 F.2d 375 (2nd Cir. 1954), where the court reversed its earlier holding, 173 F.2d 71

1. The District Court determined that Banco Nacional and the Government of Cuba are one and the same for purposes of this litigation.

2. "(2) Notwithstanding any other provision of law, no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits giving effect to the principles of international law in a case in which a claim or title or other right to property is asserted by any party including a foreign state (or a party claiming through such state) based upon (or traced through) a confiscation or other taking after January 1, 1959, by an act of that state in violation of the principles of international law, including the principles of compensation and the other standards set out in this subsection: *Provided,* That this subparagraph shall not be applicable (1) in any case in which an act of a foreign state is not contrary to international law or with respect to a claim of title or other right to property acquired pursuant to an irrevocable letter of credit

of not more than 180 days duration issued in good faith prior to the time of the confiscation or other taking, or (2) in any case with respect to which the President determines that application of the act of state doctrine is required in that particular case by the foreign policy interests of the United States and a suggestion to this effect is filed on his behalf in that case with the court." (Foreign Assistance Act of 1965, Sec. 620(e) (2), 22 U.S.C. § 2370(e) (2).)

3. We regret that our views could not have been brought to the attention of the lower courts. Unfortunately, it was only after the not-yet-published opinion of the Second Circuit Court of Appeals was handed down that the question of the appropriateness of State Department action arose, since it did not become clear until that time that the Sabbatino Amendment would be considered inapplicable. No formal request for a statement by the Department was made in this case until October 14, 1970, one day after the petition for writ of *certiorari* was filed.

(2nd Cir. 1949), that the act of state doctrine precluded the court's adjudication of the validity of certain acts of the (Nazi) German Government. The basis for this reversal was a statement by Jack B. Tate, Acting Legal Adviser, Department of State, indicating that

> "The policy of the Executive, with respect to claims asserted in the United States for restitution of such property (or compensation in lieu thereof) lost through force, coercion or duress as a result of Nazi persecution in Germany, is to relieve American courts from any restraint upon the exercise of their jurisdiction to pass upon the validity of the acts of Nazi officials."

210 F.2d at 376. Thus the Executive had indicated that the act of state doctrine need not be applied in a certain class of cases; the applicability of the statement was not limited to the *Bernstein* case.

In Banco Nacional de Cuba v. Sabbatino, *supra,* the Supreme Court held that the act of state doctrine precluded the examination of the validity of the act of a foreign sovereign within its own territory, even where that act was allegedly a violation of international law. 376 U.S. at 436–37 [84 S.Ct. 923]. The ruling was based on the Court's recognition of the Executive's prerogatives in the area of foreign affairs; it found the act of state doctrine "arising out of the basic relationships between branches of government in a separation of powers." *Id.* at 423. However, the Court specifically avoided ruling on the validity of the *Bernstein* exception. *Id.* at 436.

While the Department of State in the past has generally supported the applicability of the act of state doctrine, it has never argued or implied that there should be no exceptions to the doctrine. In its *Sabbatino* brief, for example, it did not argue for or against the *Bernstein* principle; rather it assumed that judicial consideration of an act of state would be permissible when the Executive so indicated, and argued simply that the exchange of letters relied on by the lower courts in *Sabbatino* constituted "no such expression in this case." Brief of the United States, page 11.

Recent events, in our view, make appropriate a determination by the Department of State that the act of state doctrine need not be applied when it is raised to bar adjudication of a counterclaim or setoff when (a) the foreign state's claim arises from a relationship between the parties existing when the act of state occurred; (b) the amount of the relief to be granted is limited to the amount of the foreign state's claim; and (c) the foreign policy interests of the United States do not require application of the doctrine.

The 1960's have seen a great increase in expropriations by foreign governments of property belonging to United States citizens. Many corporations whose properties are expropriated, financial institutions for example, are vulnerable to suits in our courts by foreign governments as plaintiff, for the purpose of recovering deposits or sums owed them in the United States without taking into account the institutions' counterclaims for their assets expropriated in the foreign country.

The basic considerations of fairness and equity suggesting that the act of state doctrine not be applied in this class of cases, unless the foreign policy interests of the United States so require in a particular case, were reflected in National City Bank [of New York] v. Republic of China, 348 U.S. 356 [75 S. Ct. 423, 99 L.Ed. 389] (1956), in which the Supreme Court held that the protection of sovereign immunity is waived when a foreign sovereign enters a U.S. court as plaintiff. While the Court did not deal with the act of state doctrine, the basic premise of that case—that a sovereign entering court as plaintiff opens itself to counterclaims, up to the amount of the original claim, which could be brought against it by that defendant were the sovereign an ordinary plaintiff—is applicable by analogy to the situation presented in the present case.

In this case, the Cuban government's claim arose from a banking relationship with the defendant existing at the time the act of state—expropriation of defendant's Cuban property—occurred, and defendant's counterclaim is limited to the amount of the Cuban government's claim. We find, moreover, that the foreign policy interests of the United States do not require the application of the act of state doctrine to bar adjudication of the validity of a defendant's counterclaim or set-off against the Government of Cuba in these circumstances.

The Department of State believes that the act of state doctrine should not be applied to bar consideration of a defendant's counterclaim or set-off against the Government of Cuba in this or like cases.

Sincerely yours,

JOHN R. STEVENSON.

HAYS, Circuit Judge (dissenting):

By refusing to apply the exception to the act of state doctrine announced by this court in the third *Bernstein* case, Bernstein v. N.V. Nederlandsche-Amerikaansche Stoomvaart-Maatschappij, 210 F.2d 375 (2d Cir. 1954), the majority is engaging in precisely the kind of judgment which the act of state doctrine has removed from judicial determination.

The majority's attempt to distinguish *Bernstein* shows a misapprehension of the basis upon which the *Bernstein* exception was formulated. *Bernstein* was a per curiam opinion in which this court set forth part of the text of a State Department letter. The court, making no independent evaluation of the letter itself, then stated that "[i]n view of this supervening expression of Executive Policy, we amend our mandate in this case by striking out all restraints based on the inability of the court to pass on acts of officials in Germany during the period in question." *Id.* at 376. Considerations such as the acts of the Nazi government, the fact that we were at war with the government in question,

and the fact that that government no longer existed, all used by the majority to distinguish *Bernstein,* were set forth not by the court but by the State Department in its letter. Unless the majority wishes to overrule *Bernstein,* it must accept the *Banco Nacional* letter as an expression of Executive Policy and go no further. In Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 420, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), the Court held that there had been no expression of Executive Policy.

More fundamental than a mere lack of conformity with *Bernstein,* however, is the fact that the majority, by applying the act of state doctrine after an independent evaluation of the merits of the State Department's decision, is usurping the same executive prerogative which it is the function of that doctrine to preserve. The recognition of this conflict is the very reason for the *Bernstein* exception. The fundamental premise behind the act of state doctrine is that "[t]he conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative—'the political'—departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." Oetjen v. Central Leather Co., 246 U.S. 297, 302, 38 S.Ct. 309, 311, 62 L.Ed. 726 (1918). It is not the function of the courts to choose between competing foreign policy considerations and conclude that Nazi Germany is "bad" and that Cuba is "good." The attitude of the United States toward foreign powers must be left, as in *Bernstein,* to the decision of the other branches of government. As the Court said in *Sabbatino,* in discussing the related issue of a judicial determination of the right of a foreign country to sue in our courts, "[t]his Court would hardly be competent to undertake assessments of varying degrees of friendliness or its absence * * *." Banco Nacional de Cuba v. Sabbatino, *supra,* 376 U.S. at 410, 84 S.Ct. at 931. The majority has undertaken just such

an assessment and, in doing so, ignores both the exception to the act of state doctrine in *Bernstein,* and the fundamental purpose of the doctrine itself. I must dissent from what I consider to be a deviation from our judicial function.