David BRAKA, Ivor Braka, Murray Braka, Moises Braka, Isaac Braka, Percy N. Scherr, Lisa Bogart and Susan Bogart, Plaintiffs-Appellants,

v.

BANCOMER, S.N.C., Defendant-Appellee.

No. 694, Docket 84–7626.

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1985.

Decided May 20, 1985.

Robin Cass, New York City (Lenefsky & Meier, New York City, of counsel), for plaintiffs-appellants.

Manuel R. Angulo, New York City (Matias A. Vega, Curtis, Mallet-Prevost, Colt & Mosle, New York City, of counsel), for defendant-appellee.

Before VAN GRAAFEILAND, MESKILL and WINTER, Circuit Judges.

MESKILL, Circuit Judge:

This appeal represents our second opportunity in recent months to consider the effect of foreign financial decrees on the investments of United States entities. Because we agree with the district court that plaintiffs' recovery is barred by the act of state doctrine, we affirm the judgment of the United States District Court for the Southern District of New York, Sofaer, J., dismissing plaintiffs' complaint, 589 F.Supp. 1465 (S.D.N.Y.1984).

In our previous excursion into the intricacies of the act of state doctrine, *Allied Bank International v. Banco Credito Agricola de Cartago*, 757 F.2d 516 (2d Cir. 1985) (on rehearing), we held that because the situs of the debt was in the United

States, the act of state doctrine did not operate to prevent the creditors from recovering for their losses. In the case before us, however, the doctrine does bar relief because the situs of defendant's obligations was in Mexico.

## I

Plaintiffs are a number of United States citizens who purchased peso- and dollar-denominated certificates of deposit (CDs) from defendant Bancomer, S.A. (Bancomer). When plaintiffs' purchases were made in 1981, Bancomer was a privately run Mexican bank. Plaintiffs arranged for their purchases by telephone with Bancomer's Mexico City office. The purchases were effected either through application of plaintiffs' funds that were on deposit in Mexico or through plaintiffs' delivery of checks drawn on their New York banks payable to Bancomer's New York agency. If the latter method was used, the agency, which was not authorized to accept deposits, transmitted the funds by interbank transfer to the Mexican office. The CDs indicated that Mexico was the place of deposit and the place of payment of principal and interest, although as a convenience such payments were sometimes transmitted to plaintiffs' New York banks. The total value of the CDs was $2,100,000. All of the CDs were scheduled to mature in February 1983, except one, which was to reach maturity in September 1982. The annual interest rates ranged from 14.3 percent to 23.25 percent.

In August 1982, shortly before the first certificate was to reach maturity, the Mexican Ministry of Treasury and Public Credit issued a decree requiring that all domestic obligations be performed by delivery of an equivalent amount in pesos at the prevailing exchange rate. This decree banned the use of foreign currency as legal tender.

In September two more decrees were issued. The first nationalized Mexico's banks, including Bancomer. The second mandated a system of exchange controls that was carried out by the subsequent issuance of rules called "General Rules for Exchange Controls." As a result of these and later decrees, plaintiffs received Mexican pesos at the officially prescribed exchange rates, approximately 70–80 pesos per dollar, when they tendered their certificates on the maturity dates. Plaintiffs allege that because they did not receive the then actual market exchange rate of 135–150 pesos per dollar, they lost over $900,000.

Plaintiffs filed suit in federal district court in New York claiming damages for breach of contract and for violation of the federal securities laws. Bancomer moved to dismiss the complaint, arguing that the court lacked jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* (1982) (FSIA), that, even if jurisdiction did exist, the act of state doctrine precluded examination of Mexico's acts, and that CDs are not "securities" and so are not subject to the securities laws.

The district court considered only the first two defenses. Ruling that it could view the motion either as a Rule 12(b)(6) motion to dismiss or as a Rule 56 motion for summary judgment, the court held that the FSIA did not render Bancomer immune from suit but that the act of state doctrine did bar judicial review of plaintiffs' claims.

First, the court held that Bancomer's issuance of CDs was a commercial rather than a sovereign act, and that it therefore fell within the commercial activity exception to FSIA, 28 U.S.C. § 1605(a)(2). The court ruled, moreover, that the fact that Bancomer was prohibited from complying with its contractual obligations by a governmental decree did not render Bancomer immune from suit.

However, the court went on to hold that the absence of immunity did not render plaintiffs' claims justiciable. Because the situs of plaintiffs' CDs was in Mexico, the court determined that act of state principles prevented judicial examination of the complaint. In addition, the court rejected plaintiffs' claims that they were harmed by a commercial activity of the Mexican government. Noting that Mexico had acted within its governmental function of set-

ting monetary policy, the court held that Mexico's issuance of exchange controls was not a commercial activity. Therefore, the court rejected plaintiffs' claims as barred by the act of state doctrine.[1] The court dismissed plaintiffs' action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, or in the alternative, pursuant to Fed.R.Civ.P. 56, for failure to demonstrate the existence of a genuine issue of material fact.

## II

■ Because we affirm the district court's dismissal of plaintiffs' complaint on act of state grounds, we need not on this appeal address appellee's claim that the court erred in failing to find Bancomer immune from suit under the FSIA. Our recent, thorough exposition of the act of state doctrine in *Allied* makes a similar discussion unnecessary here. *Allied*, at 519–21. We need recall only that the doctrine bars judicial review of "the validity of a taking of property within its own territory by a foreign sovereign government." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428, 84 S.Ct. 923, 940, 11 L.Ed.2d 804 (1964). In addition, we note that the policy concerns underlying the doctrine require that the political branches be preeminent in the realm of foreign relations. Accordingly, the Supreme Court has directed that each case be analyzed individually to determine the need for a separation of powers: "the less important the implications of an issue are for our foreign relations, the weaker the justification for exclusivity in the political branches." *Id.* at 428, 84 S.Ct. at 940; *see also Garcia v. Chase Manhattan Bank, N.A.*, 735 F.2d 645, 651 (2d Cir.1984); *International Association of Machinists v. OPEC*, 649 F.2d 1354, 1360 (9th Cir.1981), *cert. denied*, 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319 (1982). Our examination of the facts in the instant case convinces us that the district court was correct in ruling that the relevant considerations mitigate against judicial intervention.

### Situs of Obligation

■ In reviewing the district court's conclusion on the applicability of the act of state doctrine, we must first determine the situs of the property that was taken by the Mexican exchange controls. As we noted in *Allied*, "the concept of the situs of a debt for act of state purposes differs from the ordinary concept." 757 F.2d at 521. The test we adopted in *Allied* was whether the purported taking was "able to come to complete fruition within the dominion of the [Mexican] government." *Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co.*, 392 F.2d 706, 715–16 (5th Cir.), *cert. denied*, 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968). Here, unlike *Allied*, it is clear that Mexico's actions meet this test.

The property at issue was Bancomer's obligation to pay the contractually mandated return on plaintiffs' investment. Plaintiffs argue that the situs of this obligation was New York. They allege that because they made some purchases by giving checks to Bancomer's New York agency and received some interest payments in New York, they could demand that Bancomer fulfill its obligation by paying them in New York.

The CDs named Mexico City as the place of deposit and of payment of interest and principal. Although some of the CDs were dollar-denominated, Bancomer never agreed to pay them in any location other than Mexico. The fact that plaintiffs' deposits were occasionally accepted and transmitted to Mexico by Bancomer's New York agency does not alter the situs of Bancomer's obligation. It is clear that the accomplishment of interbank transfers, which was the extent of the New York

1. The district court also held that the Hickenlooper Amendment, 22 U.S.C. § 2370(e)(2) (1982), did not apply because currency regulations do not create "takings" within the meaning of the Amendment. In response to plaintiffs' argument that the validity of Mexico's action was not at issue because plaintiffs' dispute was only with Bancomer, the court noted that any judgment for plaintiffs would contravene Mexico's decree. Therefore, the court rejected plaintiffs' attempt to remove this question from the realm of act of state analysis.

agency's participation, does not change the contractually mandated situs of plaintiffs' property. The CDs were located in Mexico and were therefore subject to the effects of the exchange control regulations. The Mexican government "ha[d] the parties and the *res* before it and act[ed] in such a manner as to change the relationship between the parties touching the *res*." *Tabacalera*, 392 F.2d at 715. To intervene to contradict the result of the exchange controls would be an impermissible intrusion into the governmental activities of a foreign sovereign.

Plaintiffs' attempt to equate their case with *Garcia* is unavailing. In *Garcia* we held that the act of state doctrine did not bar recovery because the parties expressly provided for repayment at any Chase branch, anywhere in the world. 735 F.2d at 646, 650. Here, by contrast, no such wide-ranging agreement exists. Thus, we hold that the situs of defendant's obligation existed wholly within the boundaries of the foreign sovereign, and that the act of state doctrine therefore bars recovery.

*Commercial Activity Exception*

■ Plaintiffs assert that even if their claim is barred by the act of state doctrine, a commercial activity exception will permit them to prevail. They rely on *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 696–706, 96 S.Ct. 1854, 1862–1867, 48 L.Ed.2d 301 (1976) (plurality opinion). Plaintiffs insist that we have adopted this so-called exception, citing *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 316 n. 38 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982), and *Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 72–73 (2d Cir.), *cert. denied*, 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977). We do not read the dicta in those cases as an adoption of the suggested exception. Even if we decided that the act of state doctrine is not applicable to commercial transactions of foreign governments, the result here would be the same. *Cf. Empresa Cubana Exportadora de Azucar y sus Derivados v. Lamborn & Co.*, 652 F.2d 231, 238 (2d Cir.1981). The activity that implicates act of state concerns here was the issuance by the Mexican government of exchange controls which prevented Bancomer from performing its contractual obligations. This action, taken by the Mexican government for the purpose of saving its national economy from the brink of monetary disaster, surely represents the "exercise [of] powers peculiar to sovereigns." *Dunhill*, 425 U.S. at 704, 96 S.Ct. at 1866 (plurality opinion). Those sovereign powers, unlike acts that could be taken by a private citizen, trigger no commercial exception. *Clayco Petroleum Corp. v. Occidental Petroleum Corp.*, 712 F.2d 404, 408 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984). *Cf. First National Bank of Boston (International) v. Banco Nacional de Cuba*, 658 F.2d 895, 902 (2d Cir.1981), *cert. denied*, 459 U.S. 1091, 103 S.Ct. 579, 74 L.Ed.2d 939 (1982).

Plaintiffs protest that they seek no intervention into Mexico's sovereign acts; they merely request that we order Bancomer to perform its commercial contractual commitments. However, Bancomer has already paid plaintiffs all that it may under Mexican law. Were we to issue the order they seek, we would find ourselves directing a state-owned entity to violate its own national law with respect to an obligation wholly controlled by Mexican law. This would clearly be an impermissible "inquiry into the legality, validity, and propriety of the acts and motivation of foreign sovereigns acting in their governmental roles within their own boundaries." *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1380 (5th Cir.1980). Therefore, the action at issue is sovereign rather than commercial. We leave for another day consideration of the possible existence in this Circuit of a commercial exception to the act of state doctrine under *Dunhill*.

### III

The act of state doctrine bars consideration of plaintiffs' complaint because the situs of defendant's obligations was in Mexico and the acts in question were taken

226

by the Mexican government in its capacity as a sovereign. We affirm the judgment of the district court.