John FICKLING and the Estate of
Florence Fickling, deceased,
Plaintiff,

v.

The COMMONWEALTH OF AUSTRALIA, The State of Victoria, and Tony Lyons, in his official capacity as Registrar of Titles, Victorian Government, Defendants.

No. CV 90–1592.

United States District Court,
E.D. New York.

Oct. 4, 1991.

Alan R. Aledort, Jericho, N.Y., for plaintiff.

Morgan, Lewis & Bockius by James W. Harbison, Jr., New York City, for defendants.

WEXLER, District Judge.

Plaintiffs John Fickling ("Fickling") and the Estate of Florence Fickling ("the estate") (collectively "plaintiffs") bring the above-referenced action against defendants the Commonwealth of Australia ("Australia"), the State of Victoria ("Victoria"), and Tony Lyons ("Lyons"), in his official capacity as Registrar of Titles of the Victorian Government (collectively "defendants"). Plaintiffs allege, *inter alia*, that defendants' acceptance of caveats on the property of a corporation controlled by Fickling constitutes a taking, nationalization, expropriation and/or seizure of plaintiffs' property without compensation and in violation of international law. Currently before this Court is defendants' motion to dismiss plaintiffs' claims pursuant to subsections (1), (2), and (6) of Rule 12(b) of the Federal Rules of Civil Procedure. In addition, defendants argue that the action is nonjusticiable under the Act of State doctrine. Finally, defendants seek attorney's fees under Rule 11 of the Federal Rules of Civil Procedure.

## BACKGROUND

### A. *The Parties*

Fickling is a citizen of the United States who, on November 1, 1975, married Carol Fickling ("Carol"), a citizen of Australia. The couple was married in Victoria, Austra-

lia where they resided as husband and wife before separating on or about January 16, 1986. Carol and the couple's four children continue to reside in Victoria. Fickling has returned to the United States and currently is a resident of the County of Suffolk, New York.

Florence Fickling, the natural mother of Fickling, was a citizen of the United States residing in the County of Suffolk until she died intestate on June 22, 1980. Fickling was appointed administrator of his mother's estate on July 29, 1980, by decree of the Surrogate's Court of the County of Suffolk. Fickling, as administrator of the estate, has authorized the commencement of this action.

Australia is a "foreign state" as defined by the Foreign Sovereign Immunities Act ("FSIA" or "the Act"), 28 U.S.C. § 1602 *et seq.* Victoria is a political subdivision of Australia and a "foreign state" under the FSIA. § 1603(a). Lyons is an "agency or instrumentality" of Australia under the Act. § 1603(b). All three defendants have filed Affidavits of Nonwaiver of Foreign Sovereign Immunity.

### B. *The Underlying Events*

Fickling and Carol are in the midst of a dissolution of their marriage before the Family Court of Australia ("Family Court"), a federal court having jurisdiction over that action. The Family Court's jurisdiction over Fickling is founded on the fact that the couple was domiciled in Australia prior to their separation in 1986. The events underlying the action before this Court stem from the divorce action, although plaintiffs contend that defendants' actions are unrelated to the "administering and enforcing [of] Australia's domestic relations and real property laws." Affidavit of Fickling at 2.

Plaintiffs claim to be the majority shareholders in Johned Investments Propriety Limited ("Johned"), an investment banking corporation created under the laws of Victoria. It is plaintiffs' contention that they were induced into investing United States currency in Johned by Australia's guaran-

tee that the monies infused could be repatriated at any time. Complaint at 8.

Plaintiffs allege that Carol has caused caveats to be lodged by Lyons on the freehold properties of Johned. A caveat "precludes the sale, transfer, hypothecation, mortgage, pledge, etc., [sic] of the real property upon which the Caveat is lodged." Complaint at 7. According to plaintiffs, these caveats constitute the taking of Johned's property without compensation and in violation of international law.

Johned, which is controlled by Fickling, claims to have made numerous attempts to retain commercial counsel to commence caveat removal proceedings. Plaintiffs contend that the attempts to retain counsel to represent Johned in those proceedings have been unsuccessful. Plaintiffs proffer that the attorneys they have attempted to retain conjecture that any such proceedings would be an "exercise in futility" because that action's inevitable transfer from an Australian state court to the Family Court would result in a denial of the "request for Caveat removal and the enjoin[ing of] Johned from making any further applications for such relief." *Id.* at 10–11. Plaintiffs premise this on the fact that section 78 of the Australian Family Court Act of 1975 authorizes the Family Court to decide matters concerning title or rights to property that a party has with respect to that property. In fact, subsequent to the filing of the complaint, Johned commenced, on April 6, 1990, a caveat removal proceeding in the Supreme Court of Victoria at Melbourne, Australia. That proceeding was ultimately transferred to the Family Court where it is now pending. Affidavit of Fickling at 4.

Plaintiffs allege that Fickling has been threatened with arrest in Australia and otherwise harassed by the Australian government and courts. Plaintiffs contend that the purpose of the caveats is to ensure that Fickling will succumb to Carol's "unreasonable, arbitrary, [and] capricious" marital and financial demands which are "without basis in law and in fact." Complaint at 12.

On August 8, 1990, the Family Court rendered a judgment against Fickling

awarding Carol forty percent of the couple's assets located both in Australia and the United States, and ordering Fickling to pay Carol's legal fees and $28,099 in arrears. It is to be noted that the Family Court found that Fickling and Carol "are in one form or another the owners of the shares in Johned...." Judgment of the Family Court, August 8, 1990 at 5. The validity of that order's binding effect on the United States assets is not at issue in the action before this Court. To this Court's knowledge, there has not been a final divorce decree.

As noted, plaintiffs allege that the acceptance of the caveats by Lyons on behalf of Victoria constitutes a taking, nationalization, expropriation and/or seizure without compensation of Johned's property. Plaintiffs further allege that defendants, by their combined efforts, have conspired to aid Carol in her attempt to cause Fickling to yield to her demands. Plaintiffs contend that it is "defendants' practice and procedure to cause the insolvency and bankruptcy of non-citizen parties" before the Family Court. Plaintiffs also contend that defendants' actions represent a breach of Australia's promise that plaintiffs would have the right to repatriate their foreign investment. Finally, plaintiffs allege that defendants' actions have caused plaintiffs to lose and/or forfeit assets located in the United States. Plaintiffs seek money damages against each defendant, individually and jointly and severally.

## DISCUSSION

On a motion to dismiss, the allegations of the complaint must be accepted as true, *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972), and the complaint should be construed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Furthermore, a complaint cannot be dismissed for failure to state a claim unless it appears beyond a doubt " 'that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

The FSIA provides the sole source of subject matter jurisdiction over foreign sovereigns in suits brought in United States courts. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 687, 102 L.Ed.2d 818 (1989); *see also Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir.1991) (citations omitted); *Letelier v. Republic of Chile*, 748 F.2d 790, 793 (2d Cir.1984) (citations omitted), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985). As a rule, a foreign state is immune from the jurisdiction of the courts of the United States unless one of the specific exceptions contained within sections 1605 or 1607 of the Act is found to apply. § 1604; *see Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488–89, 103 S.Ct. 1962, 1968–69, 76 L.Ed.2d 81 (1983); *Carey v. National Oil Corp.*, 592 F.2d 673, 676 (2d Cir.1979) (footnote omitted). It is only if it is determined that a foreign state is not entitled to immunity that the FSIA confers original jurisdiction on district courts. 28 U.S.C. § 1330(a); *Verlinden*, 461 U.S. at 489, 103 S.Ct. at 1969 ("[I]f the claim does not fall within one of the exceptions, federal courts lack subject-matter jurisdiction."); *see also Shapiro*, 930 F.2d at 1017 (citing § 1330(a)). If subject matter jurisdiction exists, the foreign sovereign is liable in the "same manner and to the same extent as a private individual under like circumstances." *Verlinden*, 461 U.S. at 488–89, 103 S.Ct. at 1968–69 (quoting § 1606) (footnote omitted).

Plaintiffs admit that defendants constitute a "foreign state" as defined by section § 1603(a) of the FSIA. Therefore, the burden now shifts to plaintiffs to come forward with some facts which would allow this Court to find that an exception to the Act applies. *See Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 n. 6 (5th Cir.1989); *Olsen ex rel. Sheldon v. Mexico*, 729 F.2d 641 (9th Cir.), *cert. denied*, 469 U.S. 917, 105 S.Ct. 295, 83

L.Ed.2d 230 (1984). For the reasons stated below, this Court finds that plaintiffs have failed to demonstrate that their claims fall within any of the exceptions set forth by the Act.

■ Plaintiffs ask this Court to find that Lyons' acceptance of the caveats constitutes a waiver of immunity by him under section 1605(a)(1) of the Act. Section 1605(a)(1) states, in relevant part: "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—(1) in which the foreign state has waived its immunity either explicitly or by implication[.]" Plaintiffs rest their assertion on the fact that Lyons, in his affidavit dated July 6, 1990, acknowledges that section 110 of the Transfer of Land Act of 1958, enacted by the Parliament of the State of Victoria, enables a party to bring an action against him, in his official capacity, for recovery of damages.

■ To argue that such a provision, which allows suits to be brought under certain circumstances in the courts of Victoria, is tantamount to a waiver of immunity in United States courts, either explicitly or by implication, is sheer sophistry. As defendants accurately conclude, a sovereign government's submission to suit in its own courts does not equate with a waiver of immunity in the courts of the United States. In fact, as case law in this circuit demonstrates, even explicit waivers of immunity are to be narrowly construed. *See S & S Machinery Co. v. Masinexportimport,* 706 F.2d 411, 417 (2d Cir.), *cert. denied,* 464 U.S. 850, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983); *see also O'Connell Machinery Co. v. M.V. "Americana",* 734 F.2d 115 (2d Cir.) (restricting prejudgment attachment to situations where the foreign state has explicitly waived its immunity), *cert. denied,* 469 U.S. 1086, 105 S.Ct. 591, 83 L.Ed.2d 701 (1984).

Similarly, courts demand strong evidence of a foreign sovereign's intent to waive immunity before finding a waiver by implication. *See Shapiro,* 930 F.2d at 1017 (stating that virtual unanimity exists among federal courts in holding that the implied waiver provision is to be narrowly construed). An examination of the legislative history of the FSIA reveals three examples of implied waiver: (1) when a foreign sovereign agrees to arbitrate in another country; (2) when a foreign sovereign agrees that the law of another country governs a particular contract; and (3) when a foreign sovereign fails to raise the defense of sovereign immunity in its responsive pleadings. H.R.Rep. No. 1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6617. The right to bring suit against Lyons in Victoria under the Transfer of Land Act of 1958 is not the type of activity contemplated by the legislature as evincing an intent by a foreign sovereign to impliedly waive its immunity from suit. In the absence of such an intent, a finding of an implied waiver is inappropriate. *See Shapiro,* 930 F.2d at 1017.

■ Section 1605(a)(2) of the Act establishes an exception to immunity when

the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

§ 1605(a)(2). "Commercial activity" is defined as "either a regular course of commercial conduct or a particular commercial transaction or act." § 1603(d).

Section 1605(a)(2) requires a three-part inquiry. First, the Court must identify the conduct in question. Plaintiffs accurately describe the actions about which they complain as the "acceptance of the caveats and the refusal and preclusion to lift (remove/withdraw) same." Memorandum In Opposition To Defendants' Motion To Dismiss at 7.

Second, the conduct must qualify as "commercial activity" under the FSIA. Whether the course of conduct, the trans-

action, or the acts in question can be categorized as commercial is determined by reference to the nature of the activity rather than to its purpose. § 1603(d).[1] Acts *jure gestionis* are justiciable in United States courts. Acts *jure imperii* are not. *See Verlinden*, 461 U.S. at 487, 103 S.Ct. at 1968; *see also Olsen ex rel. Sheldon*, 729 F.2d at 645. Although there is no precise formula for determining whether an act is commercial in nature, the legislative history of the FSIA instructs that an act is commercial only if it "might be made by a private person." H.R.Rep. No. 1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6619.

Plaintiffs submit that the activities surrounding the caveats are commercial in nature as defined by section 1603(d). This argument belies the fact that the acceptance of and subsequent refusal to remove the caveats are acts which are intrinsically governmental in nature. *See, e.g., Braka v. Bancomer, S.N.C.*, 762 F.2d 222, 225 (2d Cir.1985) (act of issuance of exchange controls could not be engaged for profit in by a private citizen and, therefore, not commercial in nature under the FSIA).

Plaintiffs argue that Lyons' specific act of "providing notice to the world of filings [of the caveats] is not an intrinsically governmental function but rather of commercial nature." Memorandum In Opposition To Defendants' Motion To Dismiss at 10. Although the act of filing notices can, at times, fall within the commercial sphere, in this case the public filings are inextricably related to acts unquestionably governmental in nature. Therefore, this Court finds

that the acts in question are not commercial for purposes of the Act.[2]

■■■ Plaintiffs also contend that subject matter jurisdiction exists under section 1605(a)(3). Subject matter jurisdiction may arise under section 1605(a)(3) when the case involves rights in property that was taken in violation of international law. *Kalamazoo Spice Extraction Co. v. Provisional Military Gov't of Socialist Ethiopia*, 616 F.Supp. 660, 663 (W.D.Mich.1985). However, jurisdiction under section 1605(a)(3) is limited. The property or property exchanged for it must be "present in the United States in connection with a commercial activity carried on in the United States by the foreign state" or the property or property exchanged for it must be "owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in commercial activity in the United States." § 1605(a)(3).

Although the Second Circuit had the occasion to limit the scope of section 1605(a)(3) to the former, *i.e.*, where the property is present in the United States, *see Banco Nacional de Cuba v. First Nat'l City Bank of New York*, 431 F.2d 394, 402 (2d Cir.1970), *vacated and remanded on other grounds*, 400 U.S. 1019, 91 S.Ct. 581, 27 L.Ed.2d 630 (1971), *original judgment adhered to*, 442 F.2d 530 (2d Cir.1971), *reversed on other grounds*, 406 U.S. 759, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972), plaintiffs have failed to meet *either* jurisdictional requirement. Plaintiffs' mere allegation that "as a result of the acts complained of herein, defendants operated Johned and controlled the assets there[of]," Memorandum In Opposition To Defendants' Motion To Dismiss at 12, is not enough to allow

---

**1.** For example, when a government enters into a contract to buy goods, that contract will be deemed to be commercial in nature. *See, e.g., Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 309–310 (2d Cir. 1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

**2.** This, in itself, is sufficient to preclude plaintiffs' attempt to use section 1605(a)(2) as a jurisdictional basis for their claims. However, if the activities in question had been found to be commercial, the third part of the inquiry would involve a determination of whether the foreign sovereign's commercial activity provides the

requisite nexus with the United States required by section 1605(a)(2). Plaintiffs aver that the third clause of this section is applicable. The Court notes that even if the acts could properly be categorized as commercial they would fail to provide the necessary "direct effect" in the United States. *See* § 1605(a)(2); *see also Harris v. VAO InTourist, Moscow*, 481 F.Supp. 1056, 1062 (E.D.N.Y.1979) ("Indirect injurious consequences within this country of an out-of-state act are not sufficient contacts to satisfy the 'direct effect' requirement of section 1605(a)(2).").

this Court to find that section 1605(a)(3) applies. Other than this bald assertion, plaintiffs have wholly failed to set forth any facts which would lead this Court to conclude that defendants operated or controlled Johned or otherwise engaged in any commercial activity related to this action.

■ Section 1605(a)(4) of the Act provides that a foreign sovereign is not immune in any case "in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue[.]" § 1605(a)(4). It is plaintiffs' position that defendants' actions result in the expropriation of rights in property that Fickling acquired by succession from Florence Fickling's estate which was administered in Suffolk County, New York, and of property located in the United States which serves as security for Fickling's "guarantee to Australia and New Zealand Banking Group Limited of their loan to Johned...." Memorandum In Opposition To Defendants' Motion To Dismiss at 13. Plaintiffs' assertion fails for the simple reason that defendants have not claimed rights to any property located in the United States. In fact, defendants have not claimed rights to any property of plaintiffs either in the United States or in Australia. Defendants' actions merely serve as a conduit for Carol to ensure that the properties in question are not, sold, transferred, or mortgaged pending the outcome of the marital dispute. At no time have defendants claimed to actually own or control any of plaintiffs' property. Therefore, section 1605(a)(4) cannot serve as a jurisdictional basis for plaintiffs' claims.

■ Likewise, section 1605(a)(5) is of no assistance to plaintiffs' attempt to secure subject matter jurisdiction over their claims. Section 1605(a)(5) withdraws immunity for tortious acts or omissions of a foreign state that occur in the United States. See 1605(a)(5). An examination of the legislative history of this section reveals that it is "cast in general terms as applying to all tort actions for money damages, not otherwise encompassed by section 1605(a)(2) relating to commercial activi-

ties." H.R.Rep. No. 1487, 94th Cong., 2d Sess., reprinted in 1976 U.S.Code Cong. & Ad.News 6604, 6619. Although not specifically stated in the statute, section 1605(a)(5) applies only when the entire tort takes place in the United States. See Amerada Hess, 488 U.S. at 439, 109 S.Ct. at 690. The Court finds that defendants' conduct occurred exclusively in Australia. Consequently, section 1605(a)(5) does not apply.

Having found that none of the exceptions to the FSIA set forth by plaintiffs applies, this Court is without subject matter jurisdiction over this case. That said, it is unnecessary to discuss the other grounds for dismissal that defendants raise. However, the Court notes that under the Act personal jurisdiction over a foreign state cannot exist absent subject matter jurisdiction. See § 1330(b) (personal jurisdiction exists over a foreign state if subject matter jurisdiction is present and if there is proper service of process); § 1608.

## CONCLUSION

The FSIA codifies the restrictive principle of sovereign immunity. See Verlinden, 461 U.S. at 488, 103 S.Ct. at 1968. Accordingly, the exceptions provided by the Act are to be narrowly construed. For the above stated reasons, the Court finds that none of the exceptions applies and, therefore, this Court is without subject matter jurisdiction over this action. Even construing the complaint in the light most favorable to plaintiffs, Scheuer, 416 U.S. at 236, 94 S.Ct. at 1686, the complaint must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendants' motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure is denied. The Clerk is directed to close the file in this case.

SO ORDERED.