Weinberg HIRSH, Henry Eisler, Theodore Hilsenrath, Benzion Berkowitz, and Others, Plaintiffs,

v.

STATE OF ISRAEL and State of Germany, Defendants.

No. 95 Civil 9460 (JFK).

United States District Court, S.D. New York.

April 8, 1997.

Teddy I. Moore, Flushing, NY, for Plaintiffs.

Arnold & Porter, New York City (Peter L. Zimroth, Kent A. Yalowitz, of counsel) for State of Israel.

Thomas Re & Partners, New York City, (Stuart A. Jackson, of counsel) Berliner, Corcoran & Rowe, Washington, DC, (Peter Heidenberger, Thomas G. Corcoran, Jr., of counsel) for State of Germany.

## OPINION and ORDER

KEENAN, District Judge.

Defendants State of Israel ("Israel") and Federal Republic of Germany ("Germany") move to dismiss this action pursuant to Fed. R.Civ.P. 12(b)(1), (2), (4), and (5). For the reasons set forth below, the Court grants Defendants' motions to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(1).

## BACKGROUND

Plaintiffs Weinberg Hirsh, Henry Eisler, Theodore Hilsenrath, and Benzion Berkowitz bring this action on behalf of themselves and a putative class of Holocaust survivors to recover reparation payments allegedly due them pursuant to the terms of a treaty Germany and Israel entered into in 1952 known as the Luxembourg Agreement.[1] According to the complaint, the government of West

1. Plaintiffs have not sought class certification.

Germany assumed an obligation under the treaty to compensate Holocaust survivors for their loss of freedom, loss of income, pain and suffering, bodily injury, and property damages at the hands of the Nazis during World War II. *See* Compl. ¶ 4. Plaintiffs also aver that Israel assumed an obligation to make payments to Holocaust survivors who immigrated to Israel out of a fund established by West Germany pursuant to the treaty. *See id.*

Plaintiffs charge in this action that Israel and Germany have failed to compensate Holocaust survivors in accordance with the Luxembourg Agreement. Specifically, Plaintiffs claim that Israel has failed to make adequate payments because it has grossly mismanaged or embezzled the funds provided by West Germany. *See id.* ¶¶ 4, 6. Plaintiffs allege that Germany is liable for this shortfall as Israel's "principal" with respect to payment of Holocaust survivors. *See id.* ¶ 5. Plaintiffs also claim that the Federal Republic of Germany, which was formed in 1990 with the reunification of the former East and West Germany, is obligated to pay additional compensation to Holocaust survivors on behalf of the former East Germany, which allegedly has never paid reparations to Holocaust victims. *See id.* ¶¶ 4–5. Plaintiffs seek a total of $40 billion in damages against Defendants. *See id.* ¶¶ 7–8.

## DISCUSSION

Defendants Israel and Germany move to dismiss this action for lack of subject matter jurisdiction and personal jurisdiction, and for insufficiency of process and service of process. Plaintiffs oppose the motions in a three-page memorandum of law entitled "Memorandum of Law by Plaintiffs" ("Pl. Mem.") and a seven-page memorandum entitled "Response by Plaintiffs" ("Pl.Resp.").[2] Plaintiffs have not submitted affidavits in opposition to the motions. The Court must

first consider whether it has subject matter jurisdiction to adjudicate this action. *See Cargill Int'l, S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993) ("Subject matter jurisdiction must be ascertained first.") (citing FSIA legislative history in House Report 13, *reprinted in* 1976 U.S.C.C.A.N. at 6612).

## I. The Foreign Sovereign Immunities Act

■■■■ The Foreign Sovereign Immunities Act of 1976 (the "FSIA"), 28 U.S.C. § 1602 *et. seq.*, provides the exclusive source of subject matter jurisdiction over suits against foreign states brought in United States courts.[3] *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610–11, 112 S.Ct. 2160, 2164–65, 119 L.Ed.2d 394 (1992); *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443, 109 S.Ct. 683, 693, 102 L.Ed.2d 818 (1989). The statute confers original jurisdiction on federal district courts

> without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity....

28 U.S.C. § 1330(a). However, the general rule is that a foreign state is presumptively immune from jurisdiction unless a court finds that one of the specific exceptions to immunity provided in sections 1605 to 1607 of the FSIA applies. *See id.* § 1604; *see also Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488–89, 103 S.Ct. 1962, 1968–69, 76 L.Ed.2d 81 (1983).

It is undisputed that Defendants Germany and Israel are "foreign states" within the meaning of section 1603(a) of the FSIA. See 28 U.S.C. § 1603(a). Therefore, Plaintiffs have the burden of going forward with evidence demonstrating that their claims fall within one of the statutory exceptions to sovereign immunity, although the ultimate

---

**2.** Although neither memorandum specifies which Defendant's motion it addresses, the former memorandum apparently responds to Germany's motion and the latter to Israel's motion.

**3.** Thus, Plaintiffs' averment in the complaint that jurisdiction lies under the diversity of citizenship provision, 28 U.S.C. § 1332, is incorrect. When

the FSIA was passed in 1976, Congress eliminated diversity jurisdiction against a foreign state. *See Ruggiero v. Compania Peruana de Vapores*, 639 F.2d 872, 875 (2d Cir.1981); *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1176 (D.C.Cir.1994), *cert. denied*, 513 U.S. 1121, 115 S.Ct. 923, 130 L.Ed.2d 803 (1995).

burden of persuasion remains with the foreign state. *See Drexel Burnham Lambert Group, Inc. v. Committee of Receivers for Galadari,* 12 F.3d 317, 325 (2d Cir.1993) (citing *Cargill Int'l,* 991 F.2d at 1016), *cert. denied,* 511 U.S. 1069, 114 S.Ct. 1644, 1645, 128 L.Ed.2d 365 (1994). Absent a showing by Plaintiffs that an exception to foreign sovereign immunity exists, the Court is without subject matter jurisdiction over this action.

Although the allegations in Plaintiffs' complaint and arguments in their motion papers are vague and almost entirely conclusory, the Court construes Plaintiffs as claiming five separate exceptions under the FSIA to Israel's and Germany's presumptive sovereign immunity: the waiver exception in section 1605(a)(1), the commercial activity exception in section 1605(a)(2), the property exception in section 1605(a)(3), the noncommercial tort exception in section 1605(a)(5), and the arbitration exception in section 1605(a)(6). Plaintiffs also claim that the Alien Tort Statute, 28 U.S.C. § 1350, provides a basis for subject matter jurisdiction. The Court examines whether Plaintiffs' claims fall within any of these asserted exceptions.

## II. Analysis

### A. *The Waiver Exception*

The FSIA provides that a foreign state is not immune from jurisdiction where it has "waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1).[4] Plaintiffs do not contend that either Defendant explicitly waived its rights to immunity in this action. Instead, Plaintiffs argue that Defendant Germany waived its immunity (1) by submitting a letter to the Court that failed to raise the defense of immunity; and (2) by violating *jus cogens* norms. In reviewing Plaintiffs' contentions, the Court is cogni-

zant of the Second Circuit's admonition that the FSIA's implied waiver exception must be "construed narrowly." *Shapiro v. Republic of Bolivia,* 930 F.2d 1013, 1017 (2d Cir.1991) (citing legislative history and collecting cases).

The Court first addresses the contention that Germany implicitly waived immunity in this action by "appearing first in court in writing ... without denying any allegations including 'immunity'." Pl.Mem. ¶ 17(a). What Plaintiffs characterize as Germany's "first appearance" in this action is Germany's January 5, 1996 letter to the Court advising it that Germany considered Plaintiffs' attempted service of process upon Germany's Consulate in New York invalid. *See* Germany Mem., Exh. 1. Germany's letter provides that the letter "is not intended and may not be construed as an appearance of [Germany] in this action or as waiving any rights whatsoever." *Id.*

Contrary to Plaintiffs' assertions, Germany's letter to the Court cannot be construed as an "appearance" that waives Germany's sovereign immunity defense. Although an implied waiver may be found where a foreign state files a responsive pleading that fails to raise the defense of sovereign immunity, *Cargill Int'l,* 991 F.2d at 1017, Germany's letter is not a "responsive pleading." Moreover, the express assertion in the letter that it was not intended as a waiver precludes a finding that the letter is an "unmistakable" and "unambiguous" waiver of sovereign immunity, as required to invoke section 1605(a)(1) of the FSIA. *See Shapiro,* 930 F.2d at 1017. The Court finds that Germany preserved its defense of sovereign immunity by raising it in the instant motion to dismiss the complaint. *See Drexel Burnham Lambert,* 12 F.3d at 325-27.[5]

---

4. The subsection provides in full as follows:
(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver; . . . .

28 U.S.C. § 1605(a)(1).

5. To the extent that Plaintiffs' memoranda of law can be construed as asserting that Israel also implicitly waived immunity, the Court rejects the claim. Like Germany, Israel preserved its sovereign immunity defense by raising it as a ground for dismissal in the motion now before the Court.

■ The Court next addresses Plaintiffs' contention that Germany "has waived its immunity under the Jus Cogens Norm because this is the will of the international community of states (see Hugo Princz v. Federal Republic of Germany ... )." Pl.Mem. at 3. Although it is difficult to ascertain the basis of Plaintiffs' theory from this single reference to *jus cogens,* the Court shall assume that Plaintiffs intended to assert that Germany implicitly waived immunity by acting in violation of the law of nations by failing to honor its treaty obligations.[6]

■ Jus cogens norms "proscribe a limited set of activities so universally condemned by the international community that they cannot be undertaken under any circumstances." *Denegri v. Republic of Chile,* Civ. A. No. 86–3085, 1992 WL 91914, at *3 (D.D.C. Apr.6, 1992). A foreign state violates *jus cogens* when it participates in such blatant violations of fundamental human rights as "genocide, slavery, murder, torture, prolonged arbitrary detention, and racial discrimination." *Committee of U.S. Citizens in Nicaragua v. Reagan,* 859 F.2d 929, 941 (D.C.Cir.1988).

Recently, in *Smith v. Socialist People's Libyan Arab Jamahiriya,* 101 F.3d 239 (2d Cir.1996), *petition for cert. filed,* 65 U.S.L.W. 3599 (U.S. Feb. 24, 1997) (No. 96–1357), the Second Circuit had the opportunity to address the precise question at issue here: whether a nation's violation of *jus cogens* norms constitutes an implicit waiver of sovereign immunity under section 1605(a)(1) of the FSIA. The plaintiffs in that case were representatives of two persons who died in the pre-Christmas 1988 bombing of Pan American ("Pan Am") Flight 103 over Lockerbie, Scotland and a group of former Pan Am employees. They sued Libya, alleging that its agents were responsible for planting the bomb that killed every person on board that flight. Libya moved in the district court to dismiss the action on the grounds of sovereign immunity. The district court granted Libya's motion to dismiss for lack of subject matter jurisdiction. *See id.,* 886 F.Supp. 306 (E.D.N.Y.1995).

Plaintiffs appealed the dismissal to the Second Circuit. Libya conceded for purposes of the motion that its alleged participation in the bombing would be a violation of *jus cogens,* but argued that such a violation was not an implied waiver within the meaning of section 1605(a)(1) of the FSIA. Although the Second Circuit acknowledged that the notion that a foreign state forfeits sovereign immunity when it engages in "conduct that violates fundamental humanitarian standards is an appealing one," it held after considering the FSIA's legislative history that an implied waiver based on a *jus cogens* theory is not what Congress intended by its use of the phrase "waive[r] ... by implication" in section 1605(a)(1). The court concluded

> that Congress's concept of an implied waiver, as used in the FSIA, cannot be extended so far as to include a state's existence in the community of nations—a status that arguably should carry with it an expectation of amenability to suit in a foreign court for violations of fundamental norms of international law.

101 F.3d at 244. Similarly, two other circuit courts have reached the conclusion that a violation of *jus cogens* does not confer jurisdiction under the FSIA, although for different reasons than in *Smith. See Princz,* 26 F.3d at 1174 (finding *"jus cogens* theory of implied waiver is incompatible with the intentionality requirement implicit in § 1605(a)(1)"); *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 719 (9th Cir. 1992) (finding Supreme Court decision in *Amerada Hess* foreclosed *jus cogens* theory of implied waiver), *cert. denied,* 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993).

In this action, Plaintiffs proffer no explanation of how Germany's conduct with respect to the Luxembourg Agreement violates *jus*

---

**6.** Given that the gravamen of this action is Defendants' alleged failure to make payments in accordance with the Luxembourg Agreement, the more obvious *jus cogens* argument against Germany—its role in the Holocaust—is not in issue here, as it was in the *Princz* case cited by Plain-

tiffs. *See Princz,* 26 F.3d at 1173–75 (rejecting contention that Federal Republic of Germany implicitly waived sovereign immunity by committing crimes against humanity during second World War).

*cogens.* However, even assuming that Plaintiffs had provided such an explanation, it is clear from the Second Circuit's decision in *Smith* that the *jus cogens* theory of implied waiver is not recognized in this Circuit. The Court therefore finds that Plaintiffs fail to show that section 1605(a)(1)'s implied waiver exception is applicable.

## B. *The Commercial Activity Exception*

■■■ The FSIA provides an exception to immunity where an "action is based ... upon an act outside the territory of the United States in connection with a commercial activity of [a] foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).[7] In evaluating whether an act constitutes commercial activity within the meaning of this exception, the crucial inquiry is "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Republic of Argentina,* 504 U.S. at 614, 112 S.Ct. at 2166 (quoting Black's Law Dictionary 270 (6th ed.1990) and discussing the definition of "commercial activity" in 28 U.S.C. § 1603(d)). Under the commercial activity exception, "a state is immune from the jurisdiction of foreign courts as to its sovereign or public acts *(jure imperii* ), but not as to those that are private or commercial in character *(jure gestionis)."* *Saudi Arabia v. Nelson,* 507 U.S. 349, 359–60, 113 S.Ct. 1471, 1478–79, 123 L.Ed.2d 47 (1993) (citations omitted); *see also Fickling v. Commonwealth of Australia,* 775 F.Supp. 66, 71 (E.D.N.Y.1991) ("Although there is no precise formula for determining whether an act is commercial in nature, the legislative history of the FSIA instructs that an act is commercial only if it 'might be made by a private person.'") (quoting H.R.Rep. No. 1487, 94th

Cong., 2d Sess., *reprinted in* 1976 U.S.C.C.A.N. 6604, 6619).

■■■ In determining whether "commercial activity" is at issue, the Court must first identify the conduct in question. *See Fickling,* 775 F.Supp. at 70. In this action, Plaintiffs complain that Defendants deprived them of their "rights in property ... in violation of international law." Compl. ¶ 1. The means by which Plaintiffs were allegedly deprived of these property rights were (a) by Israel's failure to make adequate payments to Holocaust survivors from the fund established pursuant to the Luxembourg Agreement; and (b) by Germany's refusal (i) after the reunification of East and West Germany, to undertake additional reparation payments on behalf of East Germany and (ii) to make up for Israel's alleged nonpayment.

The Court finds that the commercial activity exception does not apply here. It is difficult to conceive of activities more quintessentially governmental than the payment of reparations to Holocaust survivors pursuant to a treaty between two nations. Clearly, this is not the sort of "commercial" activity of foreign sovereigns that Congress intended to reach through the commercial activity exception. *See Wolf v. Federal Republic of Germany,* 95 F.3d 536 (7th Cir.1996) (Germany's promises in Luxembourg Protocols to enact and administer legislation, enter into agreement with Israel, and issue regulations implementing program to pay reparations to Holocaust victims are sovereign acts falling outside commercial activity exception); *see also Cicippio v. Islamic Republic of Iran,* 30 F.3d 164, 168–69 (D.C.Cir.1994) (holding any intercourse between two governments *qua* governments falls outside the commercial activity exception, no matter what the subject matter), *cert. denied,* 513 U.S. 1078, 115 S.Ct. 726, 130 L.Ed.2d 631 (1995); *Friedar v. Government of Israel,* 614 F.Supp. 395, 399 (S.D.N.Y.1985) (Leisure, J.)

7. The subsection provides in full as follows:
    (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
      \*   \*   \*   \*   \*   \*
    (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act

performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States; ....

28 U.S.C. § 1605(a)(2).

(no commercial exception for "determining eligibility for veterans' benefits," which is an activity "conducted only by governments"). Therefore, the Court finds that section 1605(a)(2) is inapplicable.[8]

### C. The Property Exception

■ Plaintiffs also invoke the property exception to sovereign immunity set forth in section 1605(a)(3) of the FSIA by claiming that the "complaint deals with rights in property taken in violation of international law." Compl. ¶ 1(c). Because Congress intended this exception to provide a means to remedy a foreign government's expropriation of property in the United States, *see Canadian Overseas Ores Ltd. v. Compania De Acero Del Pacifico S.A.,* 528 F.Supp. 1337, 1346 (S.D.N.Y.1982), *aff'd,* 727 F.2d 274 (2d Cir. 1984), jurisdiction over a foreign state exists only where "rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(3).[9]

Plaintiffs' complaint and two memoranda of law submitted in opposition to Defendants' motions are devoid of any facts showing that this exception applies to their claims. For instance, Plaintiffs fail to identify (1) what rights in property were taken in violation of international law; (2) what property or property exchanged for such property is present in the United States; or (3) in connection with what commercial activity carried on by Israel or Germany the property is present in the United States. *See Dayton v. Czecho-slovak Socialist Republic,* 834 F.2d 203, 205–06 (D.C.Cir.1987) (property exception inapplicable where plaintiff failed to identify property at issue in United States nor any property exchanged therefor), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1988). Even assuming that the property Plaintiffs contend was expropriated by Israel and Germany are the reparation payments Plaintiffs seek to recover in this action, section 1605(a)(3) nevertheless is inapplicable, as it has been interpreted to apply only to the expropriation of tangible property, not to the right to receive payments. *See Zappia Middle East Constr. Co., Ltd. v. Emirate of Abu Dhabi,* No. 94 Civ.1942(KMW)(AJP), 1996 WL 413680, at *8 (S.D.N.Y. July 24, 1996) (section 1605(a)(3) does not apply to "intangible" right to contractual payments); *Friedar,* 614 F.Supp. at 399 (finding FSIA section 1605(a)(3) inapplicable to ex-Israeli soldier's claim that Israeli Army failed to compensate him for medical and other expenses); *Canadian Overseas Ores Ltd.,* 528 F.Supp. at 1346 (section 1605(a)(3) does not "include intangible interests like the contractual right to payment"). Therefore, section 1605(a)(3) does not provide a basis for subject matter jurisdiction in this action.

### D. The Noncommercial Tort Exception

■ The FSIA also creates an exception to sovereign immunity in cases "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state." 28 U.S.C. § 1605(a)(5).[10] The noncommercial tort ex-

---

**8.** The Court therefore need not reach the question of whether Defendants' activities had "direct effects" in the United States.

**9.** Subsection 1605(a)(3) provides in full as follows:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

    \*    \*    \*    \*    \*    \*

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States; . . . .

28 U.S.C. § 1605(a)(3).

**10.** Subsection 1605(a)(5) provides in full as follows:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

    \*    \*    \*    \*    \*    \*

(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or

ception applies only where both the tort and injury take place within the territorial jurisdiction of the United States. *See Amerada Hess,* 488 U.S. at 440–41, 109 S.Ct. at 691–92; *Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 379 (7th Cir.1985) (citing statement in legislative history that "'the tortious act or omission must occur within the jurisdiction of the United States'") (quoting H.R.Rep. No. 1487 at 20–21, 1976 U.S.C.C.A.N. at 6619; S.Rep. No. 1310 at 20); *Cicippio,* 30 F.3d at 169.

Plaintiffs fail even to identify any specific tort committed by either Defendant, much less the place of its occurrence. The only reference to a tort in the complaint is the following:

> The complaint seeks money damages for personal injury or damages or loss of property occurring to U.S. citizens and is caused by tortious act or omissions of the defendants.

Compl. ¶ 1d. Even if Plaintiffs had identified a tortious act by Defendants, given that Plaintiffs' allegations involve conduct that occurred—at least in part—in Israel and Germany, the "entire" tort could not have taken place in the United States as required. *See* Compl. ¶¶ 4–5; *Amerada Hess,* 488 U.S. at 439, 109 S.Ct. at 690; *Fickling,* 775 F.Supp. at 72; *Kline v. Kaneko,* 685 F.Supp. 386, 391 (S.D.N.Y.1988). Indeed, Defendants' only al-

leged contact with the United States relating to this action is the "sign[ing] and deposit[ing] [of the treaty] in U.N. headquarters in N.Y. as [an] international treaty or agreement." *Id.* ¶ 4. However, this allegation is irrelevant given that Plaintiffs do not claim any tort based on the mere signing of the treaty. Therefore, the noncommercial tort exception does not apply to Plaintiffs' claims.

### E. *The Arbitration Exception*

■ Section 1605(a)(6) provides for an exception to foreign sovereign immunity where an action is brought against a foreign state either to enforce an arbitration agreement made by a foreign state concerning a subject matter capable of settlement by arbitration under federal law or to enforce an arbitral award made pursuant to such an agreement. *See* 28 U.S.C. 1605(a)(6).[11] Plaintiffs invoke this exception indirectly by asserting in the complaint that "[t]he complaint alleges an agreement or award governed by a treaty or international agreement." Compl. ¶ 1(e); *see also* Pl. Resp. ¶ 33(b) ("In this case the Defendants are not entitled to immunity, among others because [this is] .... [an] [a]ction to enforce a contract (28 U.S.C. 1605(6) [sic] )."). However, section 1605(a)(6) is facially inapplicable to the instant action, as Plaintiffs do not seek to enforce an agreement to arbitrate, nor to

---

death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—

(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; ...

28 U.S.C. § 1605(a)(5).

**11.** Subsection 1605(a)(6) provides in full as follows:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

\* \* \* \* \* \*

(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party

to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable; ....

28 U.S.C. § 1605(a)(6).

enforce an outstanding arbitral award. *Cf. Cargill Int'l*, 991 F.2d at 1017–20; *In re Chromalloy Aeroservices*, 939 F.Supp. 907, 909 & n. 1 (D.D.C.1996) (finding jurisdiction over Egypt under § 1605(a)(6) in action by defense contractor to enforce Egyptian arbitral award against Egyptian Air Force). Therefore, Plaintiffs fail to show that section 1605(a)(6) provides a basis for subject matter jurisdiction.

### F. *The Alien Tort Statute*

█ Finally, Plaintiffs suggest in opposition to Defendants' motions that the Court has jurisdiction pursuant to the Alien Tort Statute, 28 U.S.C. § 1350.[12] *See* Pl. Response ¶ 33. The Court rejects this contention. The Supreme Court ruled in *Amerada Hess*, 488 U.S. at 433–38, 109 S.Ct. at 687–90, that the Alien Tort Statute does not provide a basis for the exercise of jurisdiction over a foreign sovereign.

### *CONCLUSION*

Having thus found that Plaintiffs fail to show that any exception to foreign sovereign immunity applies in this action, the Court finds that it lacks subject matter jurisdiction.[13] Accordingly, the Court grants Defendants' motions to dismiss this action pursuant to Fed.R.Civ.P. (12)(b)(1). The Court orders this action closed and directs the Clerk to remove it from the Court's active docket.

**SO ORDERED.**

---

12. The statute provides as follows:
    The district courts shall not have jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.
    28 U.S.C. § 1350.

13. The Court also necessarily lacks personal jurisdiction, as section 1330(b) provides that personal jurisdiction over a foreign sovereign exists only when there is subject matter jurisdiction under section 1330(a) *and* service of process has been made under the provisions set forth in 28 U.S.C. § 1608. *See Cargill Int'l*, 991 F.2d at

1016; *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572, 579 (2d Cir.1993) (under the FSIA, " 'subject matter jurisdiction plus service of process equals personal jurisdiction' ") (quoting *Texas Trading & Milling Corp.. v. Federal Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir. 1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982)). The Court therefore does not reach Defendants' arguments that dismissal is warranted because service of process was not made in accordance with section 1608 of the FSIA.